Argued and submitted January 31, affirmed October 24, 2012, petition for review allowed March 28, 2013 (353 Or 428)

**STATE OF OREGON,**
*Plaintiff-Respondent,*

*v.*

**STEPHEN WAYNE ZISKA,**
*Defendant-Appellant.*

Washington County Circuit Court
C092432CR; A145162

288 P3d 1012

Ernest G. Lannet, Chief Deputy Defender, argued the cause for appellant. With him on the brief was Peter Gartlan, Chief Defender, Office of Public Defense Services.

Jeremy C. Rice, Assistant Attorney General, argued the cause for respondent. With him on the brief were John R. Kroger, Attorney General, and Mary H. Williams, Solicitor General.

Before Armstrong, Presiding Judge, and Haselton, Chief Judge, and Duncan, Judge.

ARMSTRONG, P. J.

## ARMSTRONG, P. J.

Defendant appeals his conviction for unlawfully using a weapon, ORS 166.220, assigning error to trial court rulings that, together, constituted denial of a motion for a judgment of acquittal. Defendant argues that, although he intended to threaten the victim when he menacingly waved a crowbar over his head, he did not carry the crowbar with the intent to use it against the victim, as required by ORS 166.220(1)(a), because he did not intend to use it to assault the victim. We affirm.

The relevant facts are not in dispute. After an evening of drinking with friends, defendant got into an argument with one of his housemates, A, while sitting in their living room. Tensions rose, and defendant eventually stood and challenged A to a fight. Others intervened, and a houseguest escorted A into the backyard in order to defuse the situation. Defendant, in turn, went to his room.

Minutes later, defendant returned to the living room carrying a crowbar and sat down in a chair. A came back inside and also walked into the living room. During their subsequent exchange, defendant, who was still upset with A, would raise the crowbar and wave it above his head. Eventually, defendant stood, raised the crowbar, and said, "I'm going to level you." A believed that defendant was coming toward him and intended to hit him with the crowbar. Several people intervened at that point, disarmed defendant, separated defendant and A, and called the police.

Police arrived, took defendant into custody, and gave him *Miranda* warnings. As police questioned him at the scene, defendant, who was noticeably intoxicated and upset, explained that A had offended him. A, who was much younger than defendant, had called defendant names, and defendant felt that A was belittling him. Defendant initially denied having brought the crowbar to the living room, although he eventually admitted having done so for his protection. Aside from A's derisive comments, however, defendant did not explain why he had felt threatened. Defendant claimed that he had kept the crowbar behind his back and that nobody could see it, yet he acknowledged that his housemates had forcibly taken it from him. When asked

how, if no one could see the crowbar, his housemates knew to take it from him, defendant answered, "Just take me to jail. I'm the bad guy." Police then asked if defendant had wanted his housemates to know that he "meant business"; defendant nodded his head and said, "yes."

Defendant was charged with one count of unlawfully using a weapon, ORS 166.220(1)(a), and one count of menacing, ORS 163.190. Defendant pleaded not guilty and proceeded to a bench trial, where he argued that unlawful use of a weapon, under ORS 166.220(1)(a), requires. the intent—or an attempt—to physically injure another person with a dangerous weapon. ORS 166.220(1)(a) provides:

> "A person commits the crime of unlawful use of a weapon if the person:
>
> "(a) Attempts to use unlawfully against another, or carries or possesses with intent to use unlawfully against another, any dangerous or deadly weapon as defined in ORS 161.015 * * *."

In his closing argument, defendant conceded that he had intended to threaten A with a crowbar and, consequently, that he was guilty of menacing. However, he argued that the state had failed to present evidence that he had intended to physically injure A with the crowbar and, therefore, had failed to prove that he was guilty of unlawfully using the crowbar against A.

Ultimately, the trial court rejected defendant's arguments, agreeing that the state had failed to prove that defendant intended to assault A, but concluding

> "as I look at the language of the statute, it does say 'use,' and use can include holding it up in a menacing manner. And, just from a common sense point of view, it makes sense that a statute would prohibit that[,] because menacing someone with a dangerous weapon does create a very risky situation * * *."

On appeal, defendant renews his argument that a conviction under ORS 166.220(1)(a) requires proof of intent to physically injure another with a dangerous weapon. Although acknowledging that we have held that "use" of

a weapon includes making threats with it, at least in the context of robbery, defendant contends that the legislature intended a narrower meaning of "use" when it enacted in 1917 the statute that would become ORS 166.220. He raises a number of contextual arguments to support his position. In response, the state argues that ORS 166.220(1)(a), by its terms, prohibits the possession of a weapon with the intent to put it to any unlawful use. Because menacing is unlawful, the state contends that ORS 166.220(1)(a) prohibits the possession of a weapon with the intent to use it to menace someone, as defendant admits he did here. For the reasons set out below, we agree with the state and affirm.

This is not the first time that we have been asked to construe the meaning of the term "use" in the context of a weapons statute. In *State v. Osborne*, 242 Or App 85, 255 P3d 513 (2011), the defendant was convicted of first-degree robbery after he demanded money from a store clerk while holding a knife. The defendant argued that he did not use or attempt to use the knife, as required by ORS 164.415(1)(b).[1] Instead, by holding it in his hand, the defendant contended that he had only threatened to use the knife. We rejected that argument, holding that the phrase "[u]ses or attempts to use a dangerous weapon" in that statute "describes a manner of use or *threat of immediate use* of physical force[.]" *Osborne*, 242 Or App at 90 (emphasis added).

The state notes that this case presents an almost identical argument to the one that we rejected in *Osborne* and argues that we should again reject that argument. Defendant's argument, however, is more nuanced than the one that we addressed in *Osborne*. Defendant concedes that *Osborne* accurately reflects the intent of the legislature in 1971, when the legislature defined the offense of first-degree robbery. Yet the legislature enacted what would become ORS 166.220 more than 50 years earlier, in 1917. Defendant argues that the nature of criminal weapons

---

[1] ORS 164.415 provides, as relevant:

"(1) A person commits the crime of robbery in the first degree if the person violates ORS 164.395 and the person:

"* * * * *

"(b) Uses or attempts to use a dangerous weapon * * *."

offenses changed significantly between 1917 and 1971 and that those differences should prevent us from applying *Osborne*'s reasoning to ORS 166.220(1)(a).

Defendant is correct that *Osborne* ultimately reflected our understanding of the 1971 Legislative Assembly's intent in defining first-degree robbery and, consequently, is not controlling here. Nevertheless, our holding in *Osborne* was rooted in our understanding of the everyday, ordinary meaning of the term "use" in the context of weapons "use." Further, although we have never expressly construed "use" in ORS 166.220(1)(a), we have assumed on many occasions, consistently with *Osborne*, that that term, for purposes of ORS 166.220(1)(a), includes threats as well as actual, physical assaults. *See, e.g., State v. Anlauf*, 164 Or App 672, 675, 995 P2d 547 (2000); *State ex rel Juv. Dept. v. Taylor*, 119 Or App 276, 280, 850 P2d 390, *rev den*, 317 Or 583 (1993). The Supreme Court has made the same assumption. *See State v. Linthwaite*, 295 Or 162, 171, 665 P2d 863 (1983). Accordingly, in the absence of confirmation that the 1917 Legislative Assembly intended otherwise, there is no basis for us to conclude that the legislature intended to limit the scope of the term "use" here.

Because defendant's arguments rest on his interpretation of the historical context of ORS 166.220(1)(a) at its enactment, we begin with a brief survey of the 1917 law, which, among other things, enacted the provision that would become ORS 166.220(1)(a). The 1917 law contained a number of provisions, generally regulating the manufacture, sale, and possession of dangerous weapons in Oregon in three ways.

First, the 1917 law modified Oregon's gun-control laws. It prohibited carrying a concealed firearm within a city without a permit, Or Laws 1917, ch 377, § 1; authorized law-enforcement officials to issue permits to people to carry concealed firearms, *id.* § 9; prohibited the sale of concealable firearms to people under the age of 21, *id.* § 10; and created registration requirements for all firearm sales, *id.* §§ 5, 6. *See also State v. Perry*, 336 Or 49, 55, 77 P3d 313 (2003) (discussing the 1917 law in the evolution of Oregon's concealed-weapons laws).

Second, the 1917 law regulated the manufacture, sale, or possession of certain weapons. Specifically, it prohibited outright the manufacture or sale of any "blackjack, slungshot, billy, sandclub, sadbag or metal knuckles[.]" Or Laws 1917, ch 377, § 3. And it prohibited the possession of those weapons, as well as any "dirk or dagger, or stiletto[.]" *Id.* § 2.

Third, and finally, the 1917 law contained the provision that would become ORS 166.220(1)(a):

"Any person who attempts to use, or who with intent to use the same unlawfully against another, carries or possesses a dagger, dirk, dangerous knife, razor, stiletto, or any loaded pistol, revolver, or other firearm, or any instrument or weapon of the kind commonly known as a blackjack, slungshot, billy, sandclub, sandbag, metal knuckles, bomb or bombshell, or any other dangerous or deadly weapon or instrument, is guilty of a felony. The carrying or possession of any of the weapons specified in this section by any person while committing, or attempting or threatening to commit a felony, or a breach of the peace, or any act of violence against the person or property of another, shall be presumptive evidence of carrying or possessing such weapon with intent to use the same in violation of this section."[2]

Or Laws 1917, ch 377, § 7. In that light, the third regulatory category complemented the other two, creating additional criminal penalties for people who seek to use a weapon in the commission of a crime.

With that contextual history in mind, we turn to defendant's arguments. In essence, defendant contends that "use" in ORS 166.220(1)(a) must mean "assault," as that crime existed in 1917. His argument is based on the observation that ORS 166.220(1)(a) prohibits the attempted use of a dangerous weapon or the possession of a dangerous weapon with the intent to use it: it does not prohibit the actual use of a dangerous weapon. That is so, defendant argues, because the actual "use" of a dangerous weapon was

---

[2] We recognize that the legislature has substantially revised and modified ORS 166.220(1)(a), but the basic offense—attempting to use a dangerous weapon or possessing a dangerous weapon with the intent to use it against another—has not materially changed.

already prohibited as assault. According to defendant, then, attempted "use" and the intent to "use," for the purpose of ORS 166.220(1)(a), should be construed as attempted assault and intent to assault, respectively. And because the crime of assault required a specific intent to physically injure another person, *see State v. Wilson*, 218 Or 575, 584, 346 P2d 115 (1959), a person cannot intend to "use" a dangerous weapon against another—that is, intend to assault another person—if the person merely intends to threaten the other person, as the trial court found that defendant did here. Accordingly, because the trial court did not find that defendant intended to assault A with the crowbar, the court erred in convicting defendant.

Given the context of the provisions enacted with the predecessor to ORS 166.220(1)(a) in 1917, we do not believe that the legislature intended to imbue the term "use" with the legal definition of assault instead of that term's ordinary meaning. While plausible when ORS 166.220(1)(a) is viewed standing alone, that construction would functionally transform ORS 166.220(1)(a) into an attempted-assault statute. Given that each remaining provision in the 1917 law sought to restrict the access to dangerous weapons, without regard to their use, we conclude that the legislature did not intend such a narrow meaning in ORS 166.220(1)(a).

Other criminal weapons statutes from the time support our conclusion. The legislature unambiguously prohibited physical assaults when those assaults were the scope of its concern. *See* Lord's Oregon Laws, title XIX, ch II, § 1918 (1910) (describing use of a weapon as "assaults" or "beats"); *id.* § 1923 (describing use of weapon as "assaults"); *id.* § 2047 (describing use of weapon as "strikes, wounds, stabs, shoots, or shoots at"); *id.* § 2049 (same).

Thus, we conclude that the context of ORS 166.220(1)(a) supports our understanding of the common meaning of the term "use," as explained in *Osborne*. Accordingly, we hold that "use" in ORS 166.220(1)(a) describes both the actual use of physical force and the threat of immediate use of physical force. The trial court did not err when it articulated the

elements of ORS 166.220(1)(a) in a manner consistent with our holding, and, because defendant intended to threaten the immediate use of physical force with the crowbar, the trial court did not err in finding defendant guilty of violating that statute.

Affirmed.