**Filed: December 20, 2012**

IN THE SUPREME COURT OF THE STATE OF OREGON

RACHEL M. WELDON, LPC,

Petitioner on Review,

v.

BOARD OF LICENSED
PROFESSIONAL COUNSELORS AND THERAPISTS,

Respondent on Review.

(BLPCT 2009026; CA A151028; SC S060483)

En Banc

On review of an order of the Court of Appeals.*

Argued and submitted October 10, 2012.

Michael B. Mendelson, Portland, argued the cause and filed the brief for petitioner on review.

Denise G. Fjordbeck, Attorney-in-charge, Salem, argued the cause and filed the brief for respondent on review. With her on the brief were Ellen F. Rosenblum, Attorney General, and Anna M. Joyce, Solicitor General.

WALTERS, J.

The order of the Court of Appeals is reversed, and the case is remanded to the Court of Appeals for further proceedings.

---

* Order Granting Reconsideration and Modifying Order Denying Stay, dated June 1, 2012.

WALTERS, J.

In this case, we decide that ORS 676.210 does not preclude the Court of Appeals from issuing a stay of an agency's order suspending a health care professional's occupational license. We reverse the contrary decision of the Court of Appeals and remand for further proceedings consistent with this opinion.

On January 25, 2012, the Board of Licensed Professional Counselors and Therapists (board) issued a final order suspending petitioner's license for two years and assessing costs against her in the amount of $24,301.91. Petitioner asked the board to stay enforcement of that order pending judicial review. On March 28, 2012, the board issued an amended final order of suspension. Concluding that petitioner had not demonstrated irreparable harm and had failed to show a colorable claim of error, and that substantial public harm would result if it entered a stay, the board also entered a final order denying petitioner's request for a stay. Petitioner sought review by the Court of Appeals. Petitioner filed both a petition for judicial review of the board's order of suspension, pursuant to ORS 183.482(1), and a motion seeking review of the board's order denying her request for stay, pursuant to ORAP 4.30 and ORS 183.482(3).[1] In her motion, petitioner also asked the Court of Appeals to enter an emergency stay to permit her to continue to practice until appellate court proceedings were complete.

The Appellate Commissioner granted petitioner a temporary stay pending the board's response to petitioner's motion. In its response, the board asserted that ORS

_____

[1] Unless otherwise indicated, all statutory references are to the 2011 version of the Oregon Revised Statutes.

1

676.210 precluded the Court of Appeals from entering a stay. ORS 676.210 provides:

> "No person whose license has been revoked or suspended by any board authorized by the statutes of the State of Oregon to issue licenses to practice a health care profession shall continue the practice of this profession after the order or decision of the board suspending or revoking the license of the person has been made. The license shall remain suspended or revoked until a final determination of an appeal from the decision or order of the board has been made by the court."

The Appellate Commissioner did not analyze that statute to determine whether it prohibited the Court of Appeals from issuing a stay of the board's order suspending petitioner's license. The commissioner accepted the board's understanding of ORS 676.210 but, *sua sponte,* decided that, by precluding the exercise of the court's inherent authority to grant a stay, the statute violated the separation of powers provision of Article III, section 1, of the Oregon Constitution.[2] Then, turning to the merits of petitioner's request, the commissioner determined that, although petitioner had made a showing of

---

[2] Article III, section 1, of the Oregon Constitution provides:

"The powers of the Government shall be divided into three seperate [*sic*] departments, the Legislative, the Executive, including the administrative, and the Judicial; and no person charged with official duties under one of these departments, shall exercise any of the functions of another, except as in this Constitution expressly provided."

Article III, section 1, was amended by Ballot Measure 78 (2012), to indicate that what formerly was known as the Judicial Department is a third branch, not a department, of state government. The text of the amendment is available on the Secretary of State's Website at http://oregonvotes.org/irr/2012/402text.pdf (accessed December 13, 2012). The voters approved Measure 78 at the November 6, 2012, general election. http://oregonvotes.org/doc/history/nov62012/G12_Abstract.pdf (accessed December 13, 2012) (showing the November 6, 2012 General Election abstract of votes). The change went into effect on December 6, 2012. *See* Article IV, section 1(4)(d), of the Oregon Constitution (initiative or referendum becomes effective 30 days after the day on which it is enacted or approved by a majority of the votes cast thereon).

irreparable injury, she had not demonstrated a colorable claim of error. The commissioner denied petitioner's motion for stay, but granted her alternative request to expedite judicial review and permitted her to file a supersedeas undertaking with respect to the board's assessment of costs.

The board sought reconsideration of the part of the commissioner's order that declared that ORS 676.210 violates the state constitution, but also took the position that the constitutional analysis was unnecessary because the board's order was correct under either ORS 676.210 or ORS 183.482(3). For her part, petitioner sought reconsideration of the commissioner's conclusion that she had not demonstrated a colorable claim of error. The commissioner solicited memoranda on the separation of powers issue and referred the matter to the Chief Judge of the Court of Appeals.

The Court of Appeals granted reconsideration and determined that petitioner had demonstrated a colorable claim of error. The court stated that, "if the court has authority to grant a stay, the court would * * * grant petitioner's motion for stay * * *." However, the court agreed with the board that, under the court's existing case law, the legislature constitutionally could restrict the powers of the Court of Appeals, citing *State v. Moen*, 86 Or App 87, 91, 738 P2d 228 (1987) (legislature may limit powers of statutorily created courts). Accordingly, the court denied petitioner's motion for a stay and vacated that part of the Appellate Commissioner's order that had permitted petitioner to file a supersedeas undertaking to stay the board's monetary assessments.

Petitioner turned to this court. She filed a petition for a peremptory writ of mandamus and request for stay of agency enforcement, together with an emergency

3

motion for a stay of the board's order. Petitioner asked this court either to direct the Court of Appeals to issue a stay (as that court indicated it would have done but for *Moen*), or to exercise its own inherent judicial power as a constitutionally created court to grant a stay. We treated petitioner's mandamus petition as a petition for review under Oregon Rule of Appellate Procedure (ORAP) 9.05 of the Court of Appeals' order denying her request for stay and entered a stay of the board's order suspending petitioner's license during the pendency of our review.

The parties present the issue of whether the Court of Appeals has authority to grant a stay as one of constitutional magnitude. The parties apparently agree that, in enacting ORS 676.210, the legislature carved out a discrete area -- the regulation of health care professionals -- in which a court has no power to enter a stay of a board's order. The parties assume that, because ORS 676.210 prohibits a health care professional whose license has been suspended from continuing to practice pending judicial review,[3] it also necessarily precludes a court from issuing a stay permitting that prohibited conduct. The parties differ over whether that perceived legislative prohibition violates the separation of powers provision of Article III, section 1, of the Oregon Constitution. The board argues that that constitutional provision does not apply to the Court of Appeals

---

[3]     As demonstrated later in this opinion, when the act that became ORS 676.210 was enacted in 1953, various statutes provided for "appeal" of agency decisions to a circuit court or to the Supreme Court. In 1957, the legislature enacted the Administrative Procedures Act, which provided for "judicial review" of a final decision in a contested case by any party to an agency proceeding. ORS 183.480(1) (1957). Notwithstanding introduction of the term "judicial review," some of the related statutes -- including ORS 676.210 -- continued to use the term "appeal."

because that court was created by the legislature. Furthermore, the board contends, even if that provision applies, ORS 676.210 does not offend it because the legislature did not unduly burden the judicial power by protecting against what it perceived to be the potential for harm to the public in a narrow class of cases.

Because we cannot determine whether ORS 676.210 violates the Oregon Constitution without first ascertaining its effect, we must construe the statute. *See State v. Ausmus*, 336 Or 493, 499, 85 P3d 864 (2003) (so stating); *see also State v. Guzek*, 322 Or 245, 264, 906 P2d 272 (1995) (court considers subconstitutional matters before examining state constitutional issues). For ease of reference, we again set out that statute:

"No person whose license has been revoked or suspended by any board authorized by the statutes of the State of Oregon to issue licenses to practice a health care profession shall continue the practice of this profession after the order or decision of the board suspending or revoking the license of the person has been made. The license shall remain suspended or revoked until a final determination of an appeal from the decision or order of the board has been made by the court."

We begin by examining its text. *State v. Gaines*, 346 Or 160, 171, 206 P3d 1042 (2009).

The first sentence of ORS 676.210 is directed at the licensee: "No person whose license has been revoked or suspended * * * shall continue the practice of this profession * * *." The second sentence is not directed at anyone specifically, but declares that the practitioner's license "shall remain suspended or revoked until a final determination of an appeal * * * has been made by the court." Those provisions do not expressly address, much less limit, judicial authority. However, those provisions do prohibit professionals whose licenses had been suspended or revoked from practicing during the pendency of judicial review of the board decision, and the parties assume that

5

the legislature must have intended to prohibit courts from staying agency orders that would permit continuing practice.

Our first observation about that understanding of ORS 676.210 is how far its logic reaches. If the directive that the practitioner's license "shall remain suspended or revoked" operates to preclude courts from granting a stay, then that same wording by implication also would preclude agencies from doing so. Our second and related observation is that that understanding seems to conflict with a provision of the Oregon Administrative Procedures Act (APA), specifically, ORS 183.482(3), as discussed below.[4]

The APA permits any person adversely affected or aggrieved by an agency order to obtain judicial review of the agency's decision in contested cases. ORS 183.480; ORS 183.482. The APA provides that the filing of a petition for judicial review in a contested case does not automatically stay enforcement of the agency order, but that the agency may issue a stay and that a court may review an agency's denial of a request for stay. ORS 183.482(3)(a), (d). That statute provides:

"The filing of the petition shall not stay enforcement of the agency order, but the agency may do so upon a showing of:

"(A) Irreparable injury to the petitioner; and

---

[4] The board and its order in this case are subject to the APA and ORS 183.482(3). The board is not among the agencies that are fully or partially exempt from the provisions of the APA, ORS 183.315, and the board's actions in suspending petitioner's license fall within the APA's definitions of "agency," "contested case," "license," and "order." ORS 183.310. Thus, the APA generally is applicable to the board, as supplemented by the statutes that establish the board and describe its functions, ORS 675.705 to 675.994.

6

"(B) A colorable claim of error in the order.

"(b) When a petitioner makes the showing required by paragraph (a) of this subsection, the agency shall grant the stay unless the agency determines that substantial public harm will result if the order is stayed. If the agency denies the stay, the denial shall be in writing and shall specifically state the substantial public harm that would result from the granting of the stay.

"(c) When the agency grants a stay, the agency may impose such reasonable conditions as the giving of a bond, irrevocable letter of credit or other undertaking and that the petitioner file all documents necessary to bring the matter to issue before the Court of Appeals within specified reasonable periods of time.

"(d) Agency denial of a motion for stay is subject to review by the Court of Appeals under such rules as the court may establish."

The board has adopted rules that set forth the requirements for obtaining a stay from the board and has incorporated the APA standards, apparently based on the assumption that the APA, and not ORS 676.210, controls the issuance of stays to its orders. OAR 137-003-0090, OAR 137-003-0690. When the board considered petitioner's request for stay, it acted pursuant to its rule and denied petitioner's request, not because it determined that ORS 676.210 foreclosed it from issuing a stay, but because it concluded that petitioner had not demonstrated that the requirements for issuance of a stay had been met. Later, when the board raised ORS 676.210 as a limitation on judicial authority in the Court of Appeals, the board did not contend that ORS 676.210 precluded that court from *reviewing* the board's denial of petitioner's request for stay under ORS 183.482(3)(d); rather, it argued only that ORS 676.210 precluded *that court from issuing* a stay.

7

In this court, neither party addresses the potential conflict between their accepted understanding of ORS 676.210 and the stay authority granted by the APA. However, we cannot ignore it. *See Stull v. Hoke*, 326 Or 72, 77, 948 P2d 722 (1997) ("In construing a statute, this court is responsible for identifying the correct interpretation, whether or not asserted by the parties.") We must determine whether the two statutes can be reconciled and, if not, which controls. *Guzek*, 322 Or at 266-68 (when two statutes appear inconsistent, court attempts to harmonize them in way that gives effect to both).

We begin by considering the enactment history or ORS 676.210. *See Ram Technical Services, Inc. v. Koresko*, 346 Or 215, 232, 208 P3d 950 (2009) (context includes statutory framework within which law was enacted). ORS 676.210, which applies to all health care professionals, was first enacted in 1953 as Oregon Laws 1953, chapter 592.[5] Regulation of physicians, including surgeons, began much earlier with the promulgation of the Medical Practice Act in 1889.[6] Or Laws 1889, pp 144-47. As originally drafted, that act provided fairly simple licensing requirements. In 1895, the legislature broadened and refined the Medical Practice Act to more specifically define the grounds on which a physician's license could be refused or revoked and to provide that an

---

[5] The 1953 version of the Oregon Revised Statutes contains no chapter 676. However, the 1955 version does contain chapter 676, as enacted in Oregon Laws 1953, chapter 592. References to the 1953 legislative enactment in this opinion are to both the content of Oregon Laws 1953, chapter 592, and its 1955 codification, various provisions of Oregon Revised Statutes chapter 676, as appropriate.

[6] Traditionally, the court has referred to that legislation as the Medical Practice Act, and for ease of reference, we continue to do so. *See*, *e.g.*, *State of Oregon v. Dewey*, 206 Or 496, 553, 292 P2d 799 (1956).

applicant or licensee could appeal the board's decision to the circuit court, where the case would be tried *de novo*. *See generally* Or Laws 1895, pp 61-66; also Or Laws 1895, pp 64-65, § 6. The Act also provided that, if *the board* appealed the circuit court judgment to the Supreme Court, "no such license shall be issued or reinstatement *be required* until the final determination of said cause[.]" Or Laws 1895, p 65 (emphasis added). In 1939, the legislature added a provision to the Medical Practice Act, directed at licensees, that appears to have been a precursor to what later became ORS 676.210: "No person whose license has been revoked or suspended by the board shall practice medicine and surgery pending the decision of the court upon appeal from the decision or order of the board." OCLA § 54-933(j). At the same time, the legislature also eliminated *de novo* review of that board's decisions and confined the circuit court to the record certified by the secretary of the medical board. OCLA § 54-933(e).

In 1953, other boards had statutory authority to regulate other health care professionals, including dentists, nurses, pharmacists, optometrists, chiropractors, chiropodists, naturopaths and masseurs. The decisions of those boards generally could be appealed to the circuit court, and, in some instances, could be further appealed to the Supreme Court.[7] Many governing statutes also included provisions that stated the effect

---

[7] In 1953, ORS 679.160, applicable to State Board of Dental Examiners, provided for appeal to the circuit court, which was to try the cause *de novo*, and for further appeal to the Supreme Court; ORS 678.320, applicable to the State Board of Examination and Registration of Graduate Nurses, provided for appeal to the circuit court, which was to consider the board's record and "such other evidence or testimony that either party may offer"; ORS 689.440, applicable to the State Board of Pharmacy, provided for appeal to the circuit court, without specifying the nature of the circuit court's review; ORS 683.160, applicable to Oregon State Board of Examiners in Optometry,

9

that an appeal or circuit court action would have on a board's decision during the pendency of the appeal. Those statutes almost uniformly provided that an order or judgment suspending or revoking a practitioner's license would be *without effect* until court disposition. *See* ORS 679.160(3) (1953) (regulating dentists; "[t]he judgment shall be stayed from the date of the approval of the [appeal] bond until final determination of the appeal"; ORS 678.320(3) (1953) (regulating nurses; "[i]f an appeal is taken * * * the order of revocation shall be without effect unless affirmed on appeal by the circuit court"); ORS 689.440 (1953) (regulating pharmacists; "[p]ending the appeal, the decision of the board shall be suspended until the court renders judgment, which judgment shall be final"); ORS 682.130 (1953) (regulating chiropodists; "[i]f suit is filed [in circuit court] against the board to reinstate such licensee * * *, the action of the board shall remain suspended until the validity of the license in question is adjusted by the court"); ORS 687.170 (1953) (regulating masseurs; "[u]pon appeal being taken [to the circuit court], the order of the board shall be stayed pending the disposition" and "[t]he decree shall be stayed from the date of the notice of appeal [to the Supreme Court] until final determination of the appeal").

Those statutes were in accord with the law that applied generally in the appeal of civil cases. At common law, for example, a writ of error "operated *per se* as a

---

provided for appeal to the circuit court, which was directed to "summarily hear and determine the question of the right of the applicant or licensee to practice optometry"; and ORS 687.170, applicable to Oregon State Board of Massage Examiners, provided for appeal to the circuit court, which was to try the cause *de novo*, and for further appeal to the Supreme Court.

*supersedeas* and prevented the issuance of execution to enforce the judgment, and the same effect was also given to an appeal in chancery." *Helms Groover & Dubber Co. v. Copenhagen*, 93 Or 410, 415-16, 177 P 935 (1919). Over time, the legislature enacted statutes that governed when and under what conditions an appeal had that effect. *Id.* at 416. Generally, an appeal accompanied by a statutorily required undertaking suspended the judgment and prevented its enforcement. *Id.*; *In Re Workman's Estate*, 156 Or 333, 352, 65 P2d 1395 (1937). However, even if a statute did not provide for a stay by operation of law, courts had independent, inherent power to grant orders staying enforcement. *Helms Groover & Dubber Co.*, 93 Or at 416. Courts similarly had inherent power to grant stays to preserve the subject matter of an appeal and to avoid irreparable damage to the parties. *In Re Workman's Estate*, 156 Or at 349-50. The power to stay an order pending appeal was an inherent aspect of the granting of appellate jurisdiction and served to give effect to the court's exercise of that jurisdiction. *Blair v. Blair*, 199 Or 273, 287, 247 P2d 883 (1952).

Thus, in 1953, before the enactment of ORS 676.210, an appeal of a board order suspending or revoking the license of a health care practitioner generally resulted in a stay by operation of law and precluded its enforcement during the pendency of the appeal. The one exception was, perhaps, an appeal of an order suspending or revoking the license of a physician. As noted, OCLA § 54-933(j) provided that a physician whose license had been revoked or suspended could not practice medicine "pending the decision of the court upon appeal * * *."

When it enacted what became ORS 676.210 in 1953, the legislature made

11

its provisions applicable to "any board authorized by the statutes of the State of Oregon to issue licenses to practice any of the healing or corrective arts."[8] As noted, the legislature may have modeled ORS 676.210 on OCLA § 54-933(j), which applied to physicians. That earlier statute had prohibited physicians whose licenses had been revoked or suspended from practicing during the pendency of an appeal. The 1953 version of what became ORS 676.210 prohibited health care practitioners whose licenses had been revoked or suspended from practicing at any time after the order of revocation or suspension, without regard to whether the practitioner appealed the order of revocation or suspension. However, the legislature also added a new second sentence to ORS 676.210 that was not included in the earlier statute, which provided that the license "shall remain suspended or revoked until a final determination of an appeal * * * has been made by the court." When the legislature made those changes, it codified but did not repeal OCLA § 54-933(j) or any of the other statutes that specifically addressed the effectiveness of a board's order during the pendency of an appeal.[9] Because many of those statutes

---

[8] The current version of ORS 676.210 is substantially identical to the 1953 enactment, with the exception of a 1983 amendment that replaced the phrase "any of the healing or corrective arts" with the phrase "health care profession" and that made other minor changes that are not material here. Oregon Laws 1983, ch 769, § 4.

[9] Since 1953, the legislature has repealed those statutes. *See* Or Laws 1971, ch 734, § 21 (repealing ORS 677.210, relating to physicians; ORS 678.320, relating to nurses; ORS 682.125, a 1969 enactment in lieu of ORS 682.130, relating to chiropodists; and ORS 683.160, relating to optometrists). In addition, ORS 689.440, relating to pharmacists, was repealed in 1969, Or Laws 1969, ch 514, § 57, and ORS 687.170, relating to masseurs, was repealed in 1955. Or Laws 1955, ch 492, § 15. The statute relating to dentists, ORS 679.160, has been amended over the years and still exists in substantially modified form. Or Laws 1961, ch 311, § 3; Or Laws 1967, ch 282, § 3; Or Laws 1973, ch 390, § 6; Or Laws 1977, ch 192, § 4; Or Laws 1979, ch 744, § 54; Or

provided that orders of suspension or revocation were ineffective or stayed pending a court disposition, the legislature's intent when it enacted what became ORS 676.210 in 1953 is unclear. We turn to the statute's context and legislative history for further guidance.

The context of a statute includes all provisions contained in the session law, including parts of the session law not codified as part of the statute being interpreted. *See Owens v. Maass*, 323 Or 430, 434 n 5, 918 P2d 808 (1996) (so demonstrating). When presented to the legislature in 1953, the material later codified as ORS 676.210 was one of three sections that were enacted together as part of the same act, or session law. The other two sections of the 1953 Act were later codified as ORS 676.220[10] and ORS

_____
Laws 1983, ch 169, § 13; Or Laws 1995, ch 199, § 3; and Or Laws 2003, ch 83, § 6.

The repeal of ORS 677.210, ORS 678.320, ORS 682.125 (itself an enactment in lieu of ORS 682.130), and ORS 683.160 was part of a more global act that made significant changes to various statutes within the APA. That act also made changes to certain statutes relating to specific agencies, including some of the health care professions. In general, those changes added cross-references to the APA. The other two pieces of legislation that repealed ORS 689.440 and ORS 687.170 were part of larger acts that revamped the regulation of pharmacists and masseurs.

[10]    ORS 676.220 provides:

"(1) If at any time the board suspending or revoking the license of any licentiate of a health care profession determines that such licentiate is continuing to practice the health care profession notwithstanding, the board shall in its own name bring an action to enjoin such licentiate.

"(2) If the court shall find that the licentiate has been or is continuing the practice of the health care profession for which the license has been revoked or suspended it shall issue an injunction restraining the licentiate. The commission of a single act constituting the practice of the respective health care profession shall be prima facie evidence warranting the issuance of such injunction."

13

676.230.[11] Read together, those statutes -- which remain in effect today in essentially the same form as the 1953 enactment -- express a completed thought. ORS 676.210 provides that, once a health care board has ordered the suspension or revocation of a health care professional's license, that person may no longer practice his or her profession, and that that state of affairs continues until any appeal process has concluded. ORS 676.220 authorizes the board to bring an action to enjoin the licensee from practicing, and, if the court finds that the licensee has done so, directs the court to issue an injunction restraining the licensee. ORS 676.230 makes clear that the injunction remedy is an additional remedy that does not affect other available civil or criminal remedies.

The title of an act -- which is required by dint of Article IV, section 20, of the Oregon Constitution[12] -- becomes part of the act and also may offer interpretive assistance.[13] *Turnidge v. Thompson*, 89 Or 637, 651, 175 P 281 (1918). *Accord*, *Kidder*

_____

The statute was amended in 1979 to substitute "an action" for "a suit in equity," and make other minor changes. Oregon Laws 1979, ch 284, § 191. As with ORS 676.210, ORS 676.220 was amended further in 1983 to change the reference to "any of the healing or corrective arts" to "health care profession." Oregon Laws 1983, ch 769, § 4.

[11]    ORS 676.230 provides:

"The remedy herein provided is cumulative and shall be without prejudice to any other civil or criminal remedy."

[12]    Article IV, section 20, of the Oregon Constitution, provides, in part:

"Every Act shall embrace but one subject, and matters properly connected therewith, which subject shall be expressed in the title. But if any subject shall be embraced in an Act which shall not be expressed in the title, such Act shall be void only as to so much thereof as shall not be expressed in the title."

[13]    The title that offers interpretive assistance is that used by the drafters in the

*v. Nekoma Lbr. Co, Et Al.*, 196 Or 409, 418, 249 P2d 754 (1952).  The act that included what was codified as ORS 676.210 was entitled, "AN ACT Relating to the issuance of injuctions against practitioners in the healing or corrective arts after revocation of their licence and pending appeals."  Or Laws 1953, ch 592.  That title suggests that the legislature's overall purpose in adopting the act and the provision that it included was to confer broad authority to seek, and judicial authority to order, injunctive relief prohibiting health care professionals from continuing to practice after suspension or revocation of their licenses.

The legislative history of the act confirms that understanding.  The board has provided the minutes of the House Judiciary Committee for April 9, 1953, April 13, 1953, and April 14, 1953, for our review.  The April 9, 1953, minutes recite, in their entirety:

> "Mr. Levenson explained this bill which *relates to issuance of injunctions* against practitioners in the healing or corrective arts after revocation of license and pending appeals.  He stated as long as a practitioner could keep appeals going he could still practice presently, and this bill was prepared to stop that situation and *authorizes* suspension of license pending appeal and *allowing* the Board of Medical Examiners to get an injunction if he continued to practice."

Minutes, House Committee on Judiciary, Senate Bill (SB) 326 (Apr 9, 1953) (emphasis added).  The April 13, 1953 minutes recite, in their entirety:

> "Mr. Ralph Moody discussed with the committee this bill *relating to injunctions* against practitioners in the healing or corrective arts after

---

act's "relating clause."  Titles that were affixed by legislative counsel ordinarily do not offer the same assistance.  ORS 174.540.  *See also State ex rel Penn v. Norblad*, 323 Or 464, 468-69, 918 P2d 426 (1996) (to same effect).

15

revocation of license and pending appeals. He explained that he had no personal interest in the bill nor was he representing any client with reference thereto. He explained he had represented Dr. Buck and the cases were on appeal to the Supreme Court, and he felt the decision rendered by the Court would have some bearing on this legislation. He did not feel that this bill, were it enacted, would be constitutional."

Minutes, House Committee on Judiciary, SB 326 (Apr 13, 1953) (emphasis added). The

April 14, 1953 minutes recite, in their entirety:

"Mr. Clyde Foley in behalf of the Oregon State Medical Society supported this bill *which relates to injunctions* against practitioners in the healing or corrective arts after revocation of their license and pending appeals. He explained *some question existed* under present law in this regard and this bill 'is *designed to implement* that part of the Practice Act and extend it to other boards of the healing arts.' In behalf of the Dental Association Mr. Wilderman also supported this bill. After a further discussion, Rep. Misko moved the bill 'do pass', Rep Morgan seconded the motion and it was carried."

Minutes, House Committee on Judiciary, SB 326 (Apr 14, 1953) (emphasis added).

Foley's statement on April 14 that there was "some question" about

injunctions under the present law was apparently a reference to issues that arose in the

cases to which Moody had alluded on April 13 -- *Board of Medical Examiners v. Buck*,

192 Or 66, 232 P2d 791 (1951) (*Buck I*), and *Board of Medical Examiners v. Buck*, 200

Or 488, 258 P2d 124 (1953) (*Buck II*). In the earlier case, the Board of Medical

Examiners had commenced disciplinary action against the medical license of a physician,

Dr. Buck, in 1946. Buck appealed to the circuit court, successfully challenging the

sufficiency of the amended complaint that the board had filed against him. The board

then appealed to the Supreme Court, which held that the trial court had erred in its

procedural ruling. The court reversed and remanded to the circuit court with directions to

16

proceed with the merits of the appeal.

Apparently, despite the then-applicable provisions of OCLA § 54-933(j) (no person shall practice medicine pending appeal of a license suspension or revocation) and OCLA § 54-941 (no person shall practice medicine without a license), Buck had continued to practice medicine and to perform the then-illegal procedure that had led to the revocation of his license during the pendency of the appeal. On remand to the circuit court, the board filed a motion to require Buck to show cause why the circuit court should not issue an order enjoining him from doing so. Buck moved to quash the show cause order on the basis that the circuit court had no jurisdiction to issue an injunction. The circuit court agreed, granted the motion to quash, dismissed the injunction proceeding, but affirmed the board's revocation of Buck's license on the merits. Both parties appealed to the Supreme Court -- Buck on the issue whether the circuit court had erred in revoking his license and the board on the issue whether the circuit court had erred in dismissing the injunction proceeding. The Supreme Court affirmed the board's revocation of Buck's license and declined to address as moot the question raised by the board. *Buck II*, 200 Or at 495-96. The Supreme Court did not explain the reason that the circuit court doubted its jurisdiction to enjoin Buck from practicing.

Buck's license was revoked in 1947, but he continued to practice until the Supreme Court's final decision in 1953, a period of six years. The legislature likely adopted the act that included ORS 676.210 in part to address the court's perceived inability to prevent physicians like Buck from continuing to practice during the period between the board's issuance of the order of revocation and the Supreme Court's final

17

disposition. The legislature apparently was concerned -- as the minutes suggest -- about practitioners using the appeal process to prolong their ability to practice and, for that reason, gave courts explicit authority to enjoin such action. Foley's statement that the legislation was designed to "implement that part of the Practice Act" likely is a reference to OCLA § 54-933(j), which, on its own, had proved insufficient to prohibit Buck from practicing medicine during the pendency of his appeal.

We conclude from the text, context, and legislative history of ORS 676.210 that the legislature's purpose in enacting that statute was to *grant* courts statutory power to enter injunctions, not to *deprive* them of their inherent judicial power to enter stays. The text of ORS 676.210 does not expressly prohibit courts from exercising their inherent authority to issue stays. Until the enactment of ORS 676.210, an appeal of most orders suspending or revoking a health care practitioner's professional license effected a stay by operation of law. Although the context of that statute indicates that the legislature may have intended to reverse that automatic effect, its silence on the subject of stays does not indicate that the legislature also intended to deprive courts of their authority to order otherwise, should individual circumstances compel a different result. *See State v. Hess*, 342 Or 647, 661, 159 P3d 309 (2007) (court reluctant to infer intent to deprive court of traditional authority from legislative silence). The legislative history demonstrates that the impetus for the enactment of ORS 676.210 was not an abuse of judicial power; rather it was a trial court's determination that it did not have the statutory authority to enjoin a physician's continued practice during the pendency of an appeal. That history suggests that the legislature acted to grant courts express authority that courts had expressed doubt

18

that they had, not that it intended to restrain courts from exercising judicial discretion that they most certainly possessed.

Having construed ORS 676.210, we now turn to the enactment history of the APA, ORS 183.310 to 183.750. The legislature enacted the APA, Oregon Laws 1957, ch 717, four years after it enacted ORS 676.210. One provision of the APA, ORS 183.480(3) (1957), provided:

"The filing of the petition [for judicial review] shall not stay enforcement of the agency decision, but the agency may do so, or the reviewing court may order a stay upon the giving of a bond or other undertaking or upon such other terms as it deems proper."

That statute supports our interpretation of ORS 676.210 and contradicts the interpretation of ORS 676.210 that the parties assume is correct. ORS 183.480(3) (1957) granted boards and courts express authority to issue stays of agency orders during the pendency of an appeal -- as of 1957, termed a petition for judicial review. In 1975, the legislature amended the APA to enact standards for the exercise of agency discretion, Or Laws 1975, ch 759, § 15 (codified at ORS 183.482(3)), and, as noted, to provide for court review of agency orders denying requests for stay.

Our interpretation of ORS 676.210 as granting courts authority to enter injuctions and not as prohibiting courts from ordering stays allows us to harmonize ORS 676.210, ORS 183.480(3) (1957), and ORS 183.482(3), and give effect to each. ORS 676.210 makes a board's order suspending or revoking a health care practitioner's license immediately effective and grants a court authority to enforce it, but also permits a board and a court acting pursuant to the APA to stay an order of suspension or revocation of

19

license pending appeal. A court has authority to enforce a board order pending appeal and also authority to issue a stay of a board's order in an appropriate case.

That interpretation of ORS 676.210 also renders unnecessary the argument that, in enacting the statute, the legislature unconstitutionally encroached on the powers of the judicial branch. Because we decide that the legislature did not intend to deprive courts of their inherent authority to issue stays when it enacted ORS 676.210, we need not decide whether that statute violates the separation of powers under Article III, section 1, of the Oregon Constitution. *See Westwood Homeowners Assn., Inc. v. Lane County*, 318 Or 146, 160, 864 P2d 350 (1993) (court construes statute to satisfy constitution and avoid constitutional problems). *Accord*, *State v. Duggan*, 290 Or 369, 373, 622 P2d 316 (1981) (statute construed to avoid serious constitutional difficulty).

Finally, our interpretation of ORS 676.210 is consistent with the board's decision to consider petitioner's request for stay on its merits in accordance with ORS 183.482(3) and its own rules, and with its decision not to challenge the authority of the Court of Appeals to review the board's denial of petitioner's request under ORS 183.482(3). The board went astray when it argued, and the Court of Appeals erred in deciding, that ORS 656.210 deprived the Court of Appeals of authority to issue a stay pending its decision on the merits of petitioner's appeal. We reverse the decision of the Court of Appeals and remand for further proceedings consistent with this opinion. The order of this court staying the board's order suspending petitioner's license pending review by this court shall remain in effect until the Court of Appeals issues its decision on petitioner's request for stay.

20

The order of the Court of Appeals is reversed, and the case is remanded to the Court of Appeals for further proceedings.