No. 51          August 7, 2014          799

IN THE SUPREME COURT OF THE
STATE OF OREGON

STATE OF OREGON,
*Respondent on Review,*

*v.*

STEPHEN WAYNE ZISKA,
*Petitioner on Review.*

(CC C092432CR) (CA A145162) (SC S060946) (Control)

STATE OF OREGON,
*Respondent on Review,*

*v.*

MARGARITO GARZA,
*Petitioner on Review.*

(CC C092075CR) (CA A146764) (SC S060995)

En Banc

On review of decisions of the Court of Appeals*

Argued and submitted September 17, 2013.

Ernest G. Lannet, Deputy Public Defender, argued the cause and filed the brief for petitioners on review. With him on the brief was Peter Gartlan, Chief Defender, Office of Public Defense Services.

Matthew J. Lysne, Assistant Attorney General, argued the cause and filed the brief for respondent on review. With him on the brief were Ellen F. Rosenblum, Attorney General, and Anna Joyce, Solicitor General.

LANDAU, J.

The decisions of the Court of Appeals and the judgments of the circuit courts are affirmed.

_____
    * Appeals from Washington County Circuit Court, Steven L. Price, Judge (S060946) 253 Or App 82, 288 P3d 1012 (2012); Marco A. Hernandez, Judge (S060995) 253 Or App 551, 291 P3d 774 (2012)

**LANDAU, J.**

A person commits the crime of unlawful use of a weapon if he or she "[a]ttempts to use unlawfully against another, or carries or possesses with intent to use unlawfully against another, any dangerous or deadly weapon." ORS 166.220(1)(a). The issue presented in these two consolidated cases is the meaning of the term "use" in that statute. Defendants contend that the statute applies only when a person carries or possesses a weapon with the intent to "use" the weapon by actually employing it to injure another. The state argues that the statute also applies when a person carries or possesses a weapon with intent to "use" it to threaten or menace another unlawfully, without necessarily intending to injure the other person. The trial courts agreed with the state, as did the Court of Appeals. For the reasons that follow, we affirm.

## I.  BACKGROUND

A.  *State v. Ziska*

Defendant Ziska got into an argument with a housemate. In the course of that argument, Ziska retrieved a crowbar, raised it, and told his housemate, "I'm going to level you." The housemate thought that Ziska was going to hit him with the crowbar. Others in the room disarmed Ziska and called the police. When the police arrived, they asked Ziska if he had wanted his housemate to know that he "meant business," and Ziska nodded his head and said, "yes." Defendant was arrested and charged with unlawful use of a weapon, ORS 166.220(1)(a), and menacing, ORS 163.190.

At his trial to the court, Ziska conceded that he had intended to threaten his housemate with a crowbar and that, as a result, he was guilty of menacing. He insisted that he was not guilty of unlawful use of a weapon, though, because the state failed to prove that he had intended to injure his housemate with the crowbar. The trial court found that, although the state failed to prove that Ziska intended to physically injure his roommate, it nevertheless proved that he unlawfully used a weapon. The court explained that,

"as I look at the language of the statute, it does say 'use,' and 'use' can include holding it up in a menacing manner. And, just from a common sense point of view, it makes sense that a statute would prohibit that because menacing someone with a dangerous weapon does create a very risky situation[.]"

Ziska appealed. He argued to the Court of Appeals that the trial court erred as a matter of law in finding him guilty of unlawful use of a weapon. According to Ziska, the evidence showed that he intended only to threaten his housemate with the crowbar and that such a threat does not constitute unlawful "use" of the weapon under ORS 166.220(1)(a). The Court of Appeals affirmed, holding that, under ORS 166.220(1)(a), the term "describes both the actual use of physical force and the threat of immediate use of physical force." *State v. Ziska*, 253 Or App 82, 88-89, 288 P3d 1012 (2012).

## B.  *State v. Garza*

Defendant Garza lived in a group home. The group home held an annual yard sale and, during one such sale, displayed on a table several knives for sale. Garza walked up to the table, intoxicated, and grabbed a folding knife from the table. One of Garza's housemates told him to put the knife back. Garza, who was about three feet away, "flashed the knife open" and held it out to his housemate in a threatening manner. Others at the scene called the police. Garza relinquished the knife and was arrested and charged with menacing and unlawful use of a weapon.

At his trial to the court, Garza moved for a judgment of acquittal, arguing that the state failed to prove that he intended to "use" the knife in violation of the statute. According to Garza, the term "use" under ORS 166.220(1)(a) means "to stab or to slash or something of that nature" and merely "threatening to use is not 'use'" within the meaning of that statute. The trial court denied Garza's motion, concluding:

"In this case, the defendant, in the light most favorable to the State, was using the knife and I think in actually two different ways. One, he was using the knife in a threatening manner in order to retain the knife. * * *.

"In using that knife in order to commit a robbery, he's using it unlawfully. \*\*\*. Is that an unlawful use of a weapon? I think it is.

"In addition, he was using it in order to place another individual in fear of serious physical injury. Again, I believe that that, in and of itself, also is an unlawful use of a weapon because he's attempted to use that weapon in an unlawful manner and was carrying it with that intent.

"Instead, in this case, in the light most favorable to the State, he turned around, opened that knife or opened it and then turned around, pointed it. He didn't just hold it or display it. He actually pointed it toward the victim who was only a couple of feet away."

The trial court then found Garza guilty of both menacing and unlawful use of a weapon. Garza appealed, and the Court of Appeals affirmed in a per curiam opinion, citing its opinion in *Ziska*. *State v. Garza*, 253 Or App 551, 291 P3d 774 (2012).

## II.   ANALYSIS

On review, both defendants reprise their arguments that using a weapon merely to threaten another person does not constitute "use" of a weapon within the meaning of ORS 166.220(1)(a). Defendants concede that the phrasing of the statute, at least on its face, is capable of meaning any unlawful use of a weapon, and not just use to physically injure. They nevertheless argue that, taking into account the historical context of the statute, it becomes clear that the legislature intended the statute to refer more narrowly to use of a weapon to injure another person. According to defendants, the disputed wording of ORS 166.220(1)(a) originated in 1917—a time during which, defendants contend, the legislature did not make mere threats unlawful.

For its part, the state argues that defendants' interpretation of ORS 166.220(1)(a) is contradicted by the wording of the statute itself, which broadly proscribes possession of a dangerous or deadly weapon with the intent to use it for *any* unlawful purpose, not just for the purpose of inflicting injury. Using a weapon for the purpose of committing the crime of menacing another person is just such an unlawful use, the state contends. *See* ORS 163.190 (defining offense

of menacing). As for the historical context of the statute, the state argues that defendants are simply incorrect in their reading of the relevant statutes of the early twentieth century. In the state's view, the historical context for the original enactment now codified at ORS 166.220(1)(a) confirms that it was intended to mean what it says: namely, that an unlawful "use" refers to any unlawful use, certainly one that involves using a dangerous weapon in a threatening manner.

Thus, the question before us is one of statutory construction, governed by the familiar principles set out in *PGE v. Bureau of Labor and Industries*, 317 Or 606, 859 P2d 1143 (1993), and *State v. Gaines*, 346 Or 160, 206 P3d 1042 (2009). Our task is to examine the text in context and relevant legislative history, as well as applicable maxims of construction if necessary, to determine the meaning of "use" that the legislature most likely intended when it enacted ORS 166.220. *Gaines*, 346 Or at 171-73.

We begin, as always, with the text of the statute. Under ORS 166.220(1)(a), a person commits the crime of unlawful use of a weapon if he or she "[a]ttempts to use unlawfully against another, or carries or possesses with intent to use unlawfully against another, any dangerous or deadly weapon as defined in ORS 161.015." The definitions of "dangerous weapon" and "deadly weapon" are set out in ORS 161.015:

"(1)   'Dangerous weapon' means any weapon, device, instrument, material or substance which under the circumstances in which it is used, attempted to be used or threatened to be used, is readily capable of causing death or serious physical injury.

"(2)   'Deadly weapon' means any instrument, article or substance specifically designed for and presently capable of causing death or serious physical injury."

ORS 166.220 does not define what it means to "use" such weapons "unlawfully against another." In the absence of any evidence to the contrary, we assume that the legislature intended to give those words their "plain, natural, and ordinary meaning." *PGE*, 317 Or at 611. To determine that ordinary meaning, we begin with definitions from dictionaries

that were in use at the time a statute was enacted. *Vannatta v. Keisling,* 324 Or 514, 530, 931 P2d 770 (1997) (using a "dictionary relevant to that time" in interpreting constitutional provision).

What is now ORS 166.220(1)(a) was first enacted in 1917. Or Laws 1917, ch 377, § 7. According to a dictionary of that era, the transitive verb "use" means:

> "**1**. To make use of; to convert to one's service; to avail one's self of; to employ; as, to *use* a plow, a chair, a book * * * **2**. To practice, esp. customarily; to make a practice of; as, to *use* diligence in business; as, to *use* haste. **3**. To behave toward; to act with regard to; to treat; as, to *use* a beast cruelly. * * * **4**. To accustom; to habituate; to render familiar by practice; to inure;—employed chiefly in the passive participle; as men *used* to cold and hunger."

*Webster's New Int'l Dictionary* 2258 (1910) (emphasis in original). Another dictionary of that time likewise defines the term to include a variety of senses, including "[t]o employ or make use of," "[t]o act or behave to," "[t]o have, possess, occupy, or enjoy for a time," "[t]o behave, to comport, to demean," and "[t]o frequent; to visit often or habitually." *The Encyclopaedic Dictionary* 5018 (1894); *see also The Century Dictionary* 6674 (1904) (defining the verb "use" as, among other things, "[t]o employ for the attainment of some purpose or end; avail one's self of").

Obviously, the verb "use" can be "used" in a variety of senses. And resort to dictionaries does not reveal which sense the legislature had in mind when it adopted the 1917 statute. For that, we look to the terms of the statute and how the words in dispute are used in context. *State v. Cloutier,* 351 Or 68, 96, 261 P3d 1234 (2011) (dictionaries state "what words *can* mean, depending on their context and the particular manner in which they are used") (emphasis in original); *see also State v. Fries,* 344 Or 541, 546-48, 185 P3d 453 (2008) (context determines which of multiple definitions is the one the legislature intended).

In this case, ORS 166.220(1)(a) refers to "intent to use" a "dangerous or deadly weapon." In that specific context, we can safely eliminate several of the different senses listed in the dictionary and conclude that, most likely, the

legislature intended the first of the listed senses, that is, "to make use of" or "to employ." Even that, however, does not eliminate a multiplicity of possible meanings. In the abstract, a weapon may be employed or made use of in a variety of different ways. A weapon such as a firearm, for example, may be "used" by offering it as payment in a transaction, by employing it as a device to prop open a window, by swinging it as a club, by pointing it at another person in a threatening manner, or by discharging it. Each of the foregoing is consistent with the bare dictionary definition of the verb "use" in the sense of putting to use or employing.

ORS 166.220(1)(a), however, also refers to intent to use a dangerous or deadly weapon "unlawfully against another." That narrows the definitional possibilities somewhat. Offering a weapon as collateral in an illegal drug transaction may be *using* it in a sense, but it is not doing so "against another person." But even that qualification does not eliminate the possibility that intent to "use" a dangerous or deadly weapon unlawfully against another could mean either pointing it at another in a threatening manner or actually discharging it or otherwise employing it to a harmful purpose. Given the ordinary meaning of the word "use," the wording of the statute appears to apply to either type of use, or both. As we have noted, defendants concede that much.

We cast a wider net in our contextual analysis to determine whether there is any evidence that the legislature intended ORS 166.220(1)(a) to mean something other than what the ordinary meaning of its terms suggests. Analysis of the context of a statute may include prior versions of the statute, *Weldon v. Bd. of Lic. Pro. Counselors and Therapists*, 353 Or 85, 92-93, 293 P3d 1023 (2012), including any wording changes in a statute over time, *Harris and Harris*, 349 Or 393, 402, 244 P3d 801(2010).

As we have noted, what is now ORS 166.220(1)(a) was first enacted in 1917 as part of a broader package of legislation that was intended to regulate the manufacture, sale, possession, and use of certain dangerous or deadly weapons. The 1917 statute made it a felony to use, or carry with intent to use, certain weapons that the legislature regarded as dangerous or deadly:

> "Any person who attempts to use, or who with intent to use the same unlawfully against another, carries or possesses a dagger, dirk, dangerous knife, razor, stiletto, or any loaded pistol, revolver or other firearm, or any instrument or weapon of the kind commonly known as a blackjack, slungshot, billy, sandclub, sandbag, metal knuckles, bomb or bombshell, or any other dangerous or deadly weapon or instrument, is guilty of a felony."[1]

Or Laws 1917, ch 377, § 7. The statute then provided that the mere possession of those weapons while committing, attempting to commit, or threatening to commit certain offenses created a presumption that the defendant intended to use those weapons in violation of the law:

> "The carrying or possession of any of the weapons specified in this section by any person while committing, or attempting or threatening to commit a felony, or a breach of the peace, or any act of violence against the person or property of another, shall be presumptive evidence of carrying or possessing such weapon with intent to use the same in violation of this section."

*Id.*

Nothing in that original version of the statute suggests that the legislature intended a narrow meaning of the term "use." Interpreting ORS 166.220(1)(a) to apply to an attempt or intent to "use" a weapon both in the sense of actually employing it to commit injury or employing it to threaten such harm does not conflict with any of its terms.

Defendants disagree, arguing that the word "use," as it appears in the original 1917 version of the statute, must be taken to refer to only actual—as opposed to threatened—

---

[1] Some of the weapon terms in the 1917 statute are no longer in common use today. As defined in the 1910 edition of *Webster's New International Dictionary*, a "blackjack" is a "small leather-covered club or billy weighted at the head and having an elastic shaft." *Webster's New Int'l Dictionary* 232 (1910). A "slungshot" is defined as a "small mass of metal or stone fixed on a flexible handle, strap, or the like, used as a weapon." *Id.* at 1978. A "billy" is a "bludgeon; a club; esp., a policeman's club." *Id.* at 223. A "sandbag" is a "bag filled with sand for use as a weapon" and typically attached to the end of a staff. *Id.* at 1876-77. A "dirk" is defined as a "kind of dagger or poniard" or a "short sword." *Id.* at 631. A "stiletto" is a "kind of dagger with a slender, pointed blade." *Id.* at 2045.

use because the statute itself draws a distinction between the two. Defendants point to the fact that the second sentence of the 1917 statute, which set out the presumption of intent to use, referred to actually committing, attempting to commit, *or threatening* to commit a crime while carrying or possessing a weapon. According to defendants, the phrasing of that sentence reveals that "[t]he legislature conspicuously discerned [a difference] between doing something, attempting to do something, and *threatening* to do something." Because the legislature did not do the same thing when referring to attempting or intending to "use" a weapon, defendants reason, we must understand that to "use" a weapon is something different from threatening to use it. In a similar vein, defendants argue that the nature of the weapons listed in the 1917 statute suggests a legislative concern for the risk of harm that results from actually using those weapons, as opposed to merely threatening to use them.

The problem with both arguments is that they neglect to distinguish between threatening to use a weapon and using a weapon as a threat. The two are not—or at least, not necessarily—the same. One may threaten to use a weapon without ever touching it, as when, for example, a person says to another, "If you do not give me your money, I will get my gun and shoot you." That does not constitute a current "use" of a weapon, as it is a threat to use it sometime in the future. In contrast, one also may use a weapon as a threat, as when one person points a gun at another and says, "Give me your money." In a sense, that is a threat to use the weapon in the future; there is an implicit warning that, if the money is not forthcoming, the gun will be fired. But—and this is key—it is also a current use of the weapon as a threat.

With that distinction in mind, it can readily be seen that there is less significance to the phrasing of the 1917 statute than defendant draws from it. The fact that the legislature did not prohibit threatening to use a weapon in the future says nothing about whether the legislature intended to prohibit the current use of a weapon to threaten another person.

Defendants insist that using a weapon solely as a threat was not a criminal act in 1917. Defendants, however, are incorrect. For example, at that time, Oregon law made it a crime to intimidate voters by "menace, threat, or violence, whether armed or unarmed." Lord's Oregon Laws, Title XIX, ch V, § 2059 (1910). The phrasing of the statute unambiguously refers to using a weapon as a threat without actually injuring another person. Similarly, at the same time, Oregon law included the offenses of riot, extortion, and coercion, all of which turned on "mere" threats. *Id.*, ch VI, § 2068 (defining crime of "riot" in part as "[a]ny threat to use force or violence, if accompanied by immediate power of execution"); *id.*, ch II, § 1929 (prohibiting a person from "threaten[ing] any injury to the person or property of another * * * with intent thereby to extort any pecuniary advantage * * * or with intent thereby to do any act against his will").

Moreover, to read the 1917 statute more narrowly, as defendants suggest, introduces an unnecessary and unlikely redundancy into the state's criminal statutes at the time. *See State v. Kellar*, 349 Or 626, 636, 247 P3d 1232 (2011) ("Defendant's interpretation results in a redundancy, something that we seek to avoid in interpreting statutes."). Defendants argue that, in essence, the 1917 statute's prohibition was limited to actually attempting to assault or carrying with the intent to actually assault another person. Oregon law at the time, however, already prohibited physical assaults with dangerous or deadly weapons. *See, e.g.*, Lord's Oregon Laws, Title XIX, ch II, § 1923 (1910) (prohibiting "assault with a dangerous weapon"); *id.*, § 1918 (prohibiting assaulting another person with a "cowhide, whip, stick, or other like thing," while also possessing a "pistol, dirk, or other deadly weapon, with intent to intimidate and prevent such other from resisting or defending himself").

In short, nothing in the earliest version of what is now ORS 166.220(1)(a) suggests that the legislature intended the word "use" to have the narrow meaning that defendants argue. To the contrary, the historical context suggests a broader interpretation that includes "using" a weapon either to injure another or to threaten injury.

The statute remained substantially unchanged until 1985.[2] At that point, the legislature amended the statute in response to this court's decision in *State v. Delgado*, 298 Or 395, 403-04, 692 P2d 610 (1984), in which the court concluded that a statute prohibiting the mere possession of a switchblade knife violated the right to bear arms guaranteed by Article I, section 27, of the Oregon Constitution. *See* Minutes, Senate Judiciary Committee, House Bill 2384, May 30, 1985, 4 (statement of Rep. Paul Phillips).

The legislature amended the statute in a number of ways, two of which are relevant for our purposes. First, the legislature eliminated the presumption that possession of dangerous or deadly weapons while committing, attempting to commit, or threatening to commit certain offenses alone is evidence of intent to use such weapons unlawfully. Or Laws 1985, ch 543, § 1. Second, the legislature eliminated the list of specific weapons and prohibited instead the possession of any "dangerous or deadly weapon," defined in existing law, ORS 161.015, as something that, "under the circumstances in which it is used, attempted to be used or threatened to be used, is readily capable of causing death or serious injury." Neither of those amendments suggests that the 1985 legislature intended to alter the intended meaning of the statutory term "use."

Defendants take a different view. They argue that, in defining a "dangerous weapon" as something that, "under the circumstances in which it is used, attempted to be used or threatened to be used, is readily capable of causing death or serious injury," the legislature once again shows that it knows the difference between using a weapon and threatening to use a weapon. Relatedly, defendants observe that a number of the crimes in the criminal code that the legislature adopted in 1971 drew a similar distinction between using a weapon and threatening to use a weapon, and nothing in the 1985 legislation suggests an intention to depart from that distinction. Those arguments, however, reprise defendants' erroneous conflation of threatening to use a weapon and using it as an unlawful threat.

---

[2] Before 1985, the 1917 law was amended only in minor ways. For instance, the legislature amended ORS 166.220 in 1975 to add "nunchaku sticks" to the original list of prohibited weapons. Or Laws 1975, ch 700, § 1.

We conclude that, as used in ORS 166.220(1)(a), "use" refers both to employment of a weapon to inflict harm or injury and employment of a weapon to threaten immediate harm or injury. In these cases, the evidence is undisputed that each defendant displayed a dangerous or deadly weapon against another person in a manner that threatened the other person with imminent serious physical injury. It is further undisputed that using those weapons in that manner was unlawful, in that it amounted to menacing under ORS 163.190. The evidence therefore established that both defendants violated ORS 166.220(1)(a) and that the trial courts did not err in finding defendant Ziska guilty of that charge or in denying defendant Garza's motion for a judgment of acquittal on that charge.

The decisions of the Court of Appeals and the judgments of the circuit courts are affirmed.