Argued and submitted October 28, 2015, affirmed February 3, petition for review denied June 30, 2016 (359 Or 847)

## STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

## TIMOTHY JOSEPH McAULIFFE,
*Defendant-Appellant.*

Klamath County Circuit Court
1102485CR; A156306

366 P3d 1206

Erik M. Blumenthal, Deputy Public Defender, argued the cause for appellant. With him on the brief was Peter Gartlan, Chief Defender, Office of Public Defense Services.

Jonathan Zunkel-deCoursey, Certified Law Student, argued the cause for respondent. On the brief were Ellen F. Rosenblum, Attorney General, Anna M. Joyce, Solicitor General, and Matthew J. Lysne, Assistant Attorney General.

Before Duncan, Presiding Judge, and DeVore, Judge, and Flynn, Judge.

DUNCAN, P. J.

## DUNCAN, P. J.

In this criminal case, defendant appeals, assigning error to the trial court's denial of his motion for a judgment of acquittal on one count of unlawful use of a weapon with a firearm. ORS 166.220(1)(a); ORS 161.610. Because we conclude that the state presented legally sufficient evidence to support a finding that defendant carried or possessed a shotgun with the intent either to use it to injure another person or to use it to threaten to immediately injure another person, we affirm.

We review the denial of a motion for a judgment of acquittal to determine whether, after viewing the evidence in the light most favorable to the state, a rational trier of fact could find that the elements of the crime were proved beyond a reasonable doubt. *State v. Daniels*, 348 Or 513, 518, 234 P3d 976 (2010); *State v. Smith*, 274 Or App 562, 564, 363 P3d 514 (2015). Stated in accordance with that standard, the relevant facts are as follows.

Defendant is a rancher who lives near the Klamath Falls airport. In August 2011, defendant made a series of telephone calls to the airport's operations manager to complain about a small airplane flying low over his property. In one call, defendant described the airplane, and the operations manager concluded that the airplane belonged to a flight school. In a later call, defendant angrily stated that he would "take matters into his own hands." Based on that call, the operations manager was concerned that defendant was going to "do some harm * * * to make the pilot go away." The operations manager visited defendant's property with two police officers and assured defendant that he would try to "mitigate some of the issues." After that visit, defendant made another angry telephone call to the airport to complain about the airplane flying over his property again. Sometime after that call, the operations manager visited defendant's property with the flight school pilot. When the operations manager approached defendant's property and attempted to speak with him, defendant became very agitated and yelled at him to go away.

On September 13, 2011, after the operations manager's second visit to defendant's property, defendant called

9-1-1 to report that the airplane was flying low over his property. He said that a police officer had told him to call 9-1-1 if the airplane bothered him again. Defendant was agitated and stated that "they told me they'd take care of the problem, they didn't take care of it, and now [the pilot] is doing it again." Defendant told the dispatcher, "I'm sitting here with a shotgun, [the pilot has] been coming over here all summer bothering me." The dispatcher responded that she did not want defendant "taking any drastic action with a gun, because that is not going to end well for anyone." Defendant replied, "I've been after him all summer to do something about this guy. He's just fooling with me. If they don't want to do something, then I'll do it myself. *** I'm not going to put up with any more crap."

After defendant hung up on the dispatcher, officers went to defendant's residence. They saw a shotgun on defendant's porch and a pistol holstered on his belt. When one of the officers later attempted to arrest defendant, defendant tried to spin out of his grasp and the officer tackled him. After arresting defendant, the officers transported him to the police station for questioning. During the questioning, defendant asked, "What do I have to do, shoot him down to get him off of me?" Defendant admitted that he had had "serious thoughts" about shooting at the airplane and that he had held a shotgun shell up to the airplane as it flew by in order "to send [the pilot] a message to stop flying over his house."

The state charged defendant with two counts of "unlawful use of a weapon with a firearm," one for the shotgun (Count 1), and one for the pistol (Count 2). The state also charged defendant with one count of resisting arrest (Count 3).

ORS 166.220 defines the crime of unlawful use of a weapon (UUW).[1] Counts 1 and 2 alleged that defendant violated ORS 166.220(1)(a) by carrying or possessing a

---

[1] ORS 166.220 provides, in part:

"(1) A person commits the crime of unlawful use of a weapon if the person:

"(a) Attempts to use unlawfully against another, or carries or possesses with intent to use unlawfully against another, any dangerous or deadly weapon as defined in ORS 161.015; or

dangerous or deadly weapon with the intent to use it unlawfully against another. Those counts also alleged, pursuant to ORS 161.610, that defendant "used or threatened to use a firearm." (Under ORS 161.610, which is commonly referred to as the "gun minimum statute," the state can allege, as an additional element of a felony, that the defendant used or threatened to use a firearm during the commission of the felony. The additional element, if proven, carries sentencing consequences.)

At the close of the state's case-in-chief, defendant moved for a judgment of acquittal on Counts 1 and 2, asserting that there was insufficient evidence that he intended to use either the shotgun or the pistol unlawfully against another person. In response, the state argued that there was sufficient evidence that defendant intended to use the weapons unlawfully against another person, contending that, for the purposes of the UUW statute, "use" includes not only using a weapon to injure another person, but also using a weapon to threaten to injure another person. The trial court denied defendant's motion, stating that, "with the evidence taken in the light most favorable to the state, there's a jury question as to whether or not he intended to use it unlawfully against another."

A jury found defendant guilty of Count 1 for UUW with a firearm (based on the shotgun) and Count 3 for resisting arrest. The jury found defendant not guilty of Count 2 for UUW with a firearm (based on the pistol). On appeal, defendant challenges only his conviction on Count 1.

Defendant argues that he was entitled to a judgment of acquittal on Count 1 because the state failed to present sufficient evidence to establish the intent element of UUW. Specifically, he contends that the state failed to present sufficient evidence that he "intended to use a weapon

---

"(b) Intentionally discharges a firearm, blowgun, bow and arrow, crossbow or explosive device within the city limits of any city or within residential areas within urban growth boundaries at or in the direction of any person, building, structure or vehicle within the range of the weapon without having legal authority for such discharge.

"* * * * *

"(3) Unlawful use of a weapon is a Class C felony."

as a threat[.]" According to defendant, "[t]o establish that a person intended to use a weapon as a threat, the state must show that the person employed the weapon to threaten immediate harm or injury[.]" The state failed to do so in this case, defendant argues, because it failed to show that he used the shotgun "to make a present threat." Defendant notes that there was no evidence that he pointed the shotgun at the airplane or otherwise indicated that he would fire it immediately.

Although defendant states that he is challenging the sufficiency of the state's evidence regarding his intent, his argument focuses on the state's evidence regarding his actions. He argues that "he did not unlawfully use [the shotgun] against the plane, its pilot, or its occupants[,]" and, "[t]herefore, this court should reverse the trial court's denial of [his] motion for judgment of acquittal."

Defendant's argument fails to account for the complete definition of the crime of UUW. As mentioned, ORS 166.220 defines the crime of UUW, and the state charged defendant with violating ORS 166.220(1)(a), which provides that "[a] person commits the crime of unlawful use of a weapon if the person * * * carries or possesses with intent to use unlawfully against another, any dangerous or deadly weapon." As the text of the statute makes clear, a person can commit UUW without actually "using" a weapon. All that the UUW statute requires is that the person "carries or possesses" the weapon "with intent to use [it] unlawfully against another[.]" Consequently, a person can be convicted of UUW even if the person did not actually use a weapon. For example, in *State v. Rose*, 109 Or App 378, 382, 819 P2d 757 (1991), we held that evidence that the defendant, who had been pulled over for a traffic stop, had a loaded and cocked pistol with the safety off that she had unholstered and hidden under her purse on the seat next to her was sufficient to support a finding that she intended to use the pistol against the officer who stopped her. *See also State v. Cufaude*, 239 Or App 188, 192, 244 P3d 382 (2010), *rev den*, 350 Or 130 (2011) (observing that the state can prove a violation of ORS 166.220(1)(a) by proving possession of a dangerous weapon, as opposed to actual use of the weapon).

In support of his argument, defendant relies on *State v. Ziska / Garza*, 355 Or 799, 334 P3d 964 (2014). In *Ziska / Garza*, the Supreme Court considered what actions constitute "use" of a weapon for the purposes of the UUW statute. Specifically, the court considered whether "use" is limited to actual use of a weapon to injure another person or whether "use" also includes the use of a weapon to threaten to injure another person. The issue was framed by the facts of the two cases which were consolidated for review. Defendant Ziska had an argument with a housemate, during which he raised a crowbar and told the housemate, "I'm going to level you." *Id.* at 801. Similarly, defendant Garza held a knife out in a threatening manner toward a resident of his group home. *Id.* at 802. After being charged with UUW and menacing, each of the defendants waived his right to a jury trial and tried his case to the court, arguing that he had not committed UUW because he had not actually used a weapon, he had only threatened to use one. The trial courts rejected that argument and convicted the defendants. *Id.* at 801-03.

On review, the Supreme Court affirmed the convictions, holding that, "as used in ORS 166.220(1)(a), 'use' refers both to employment of a weapon to inflict harm or injury and employment of a weapon to threaten immediate harm or injury." *Id.* at 811. Applying that holding to the cases before it, the court noted that in each case it was undisputed that the defendant "displayed a dangerous or deadly weapon against another person in a manner that threatened the other person with imminent serious physical injury" and that it was also undisputed that "using those weapons in that manner was unlawful, in that it amounted to menacing under ORS 163.190." *Id.* Therefore, the court concluded, there was sufficient evidence to support the defendants' UUW convictions. *See also Smith*, 274 Or App at 566-67 (following *Ziska / Garza*).

*Ziska / Garza* does not change the fact that UUW, as defined by ORS 166.220(1)(a), includes the mere carrying or possession of a weapon with the intent to use it unlawfully against another; use of a weapon (either to injure or to threaten immediate injury) is not required.

*Rose*, 109 Or App at 382 Thus, although we agree with defendant that the conduct for which he was prosecuted differs from that at issue in *Ziska / Garza*, in that he did not use a weapon to threaten immediate injury, that does not lead to the conclusion that defendant was entitled to a judgment of acquittal. Under *Ziska / Garza*, whether defendant was entitled to a judgment of acquittal depends on whether a rational trier of fact could find, beyond a reasonable doubt, that he carried or possessed the shotgun with the intent either (1) to employ the shotgun to inflict harm or injury or (2) to employ the shotgun to threaten immediate harm or injury.

We conclude that a rational trier of fact could find that defendant had the requisite intent. Although defendant did not actually fire the shotgun at the airplane or point it at the airplane in a manner suggesting that he would fire it immediately, a rational trier of fact could find that defendant carried or possessed the shotgun on his porch with the intent to do either of those things. As described, defendant had been concerned about the airplane flying over his property for weeks, and his statements and acts indicated that he was angry about what he believed was ongoing harassment by the pilot and nonresponsiveness by the airport's operations manager and the police. Prior to the day of the charged crimes, defendant had had a conversation with the airport's operations manager that made the operations manager believe that defendant was going to "do some harm * * * to make the pilot go away." And, on the day of the charged crimes, defendant told the 9-1-1 dispatcher, "I'm sitting here with a shotgun, [the pilot has] been coming over here all summer bothering me." He also told the dispatcher that, "If they don't want to do something, then I'll do it myself. * * * I'm not going to put up with any more crap." In addition, when questioned after his arrest, defendant admitted that he had held up a shotgun shell "to send [the pilot] a message to stop flying over his house" and that he had had "serious thoughts" about shooting at the airplane. From defendant's statements and actions, a rational trier of fact could conclude that he carried or possessed the shotgun on his porch with the intent to either fire it at the airplane or point it at the airplane in order to threaten its occupants

with immediate injury in a manner similar to the manner in which the weapons were used in *Ziska / Garza*.[2]

Certainly, a rational trier of fact could make a different finding; it could find that defendant was simply making idle threats and had no intent either to cause anyone harm or to threaten to cause anyone harm. But, on appeal, our task is not to weigh the evidence, it is only to determine whether there was legally sufficient evidence to support the challenged conviction, *State v. Johnson*, 66 Or App 326, 331, 673 P2d 1380, *rev den*, 296 Or 536 (1984), and, here, there is.

Affirmed.

---

[2] Defendant did not argue that he was entitled to a judgment of acquittal based on the "with a firearm" element that subjected him to the gun minimum sentence under ORS 161.610. Therefore, we do not address whether the evidence was sufficient to prove that element. *See State v. Pies*, 104 Or App 646, 704, 802 P2d 702 (1990) ("Without actual or threatened use, defendant's possession of the firearm, even with the intent to use it, will not support imposition of a minimum sentence under ORS 161.610."). As discussed, defendant's challenge was to whether the state proved the elements of UUW, which prohibits *carrying or possessing* a deadly or dangerous weapon with the intent to use it unlawfully against another.