Submitted December 30, 2019; in Case No. 17CR73083, conviction on Count 4 reversed, remanded for resentencing, otherwise affirmed; in Case No. 16CR43626, remanded for resentencing December 2, 2020

STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

MARTIN GARIBAY,
*Defendant-Appellant.*

Marion County Circuit Court
17CR73083, 16CR43626;
A167368 (Control), A167369

478 P3d 1006

Defendant was a prospect to join a certain gang. He and two gang members heard that three drunken men were at a particular location "talking a lot of smack." They drove to the location to tell the men to leave, understanding that, "if a fight happens, a fight happens." Upon arrival, they saw F. One of the gang members jumped out of the truck and started chasing F. F's cousin M tried unsuccessfully to intervene. Defendant got out of the truck and shot M in the foot. Defendant was subsequently tried and convicted of multiple crimes. On appeal of the judgment of conviction, he challenges only his conviction for unlawful use of a weapon, ORS 166.220, against F. Defendant contends that the trial court erred in denying his motion for judgment of acquittal on that count, because there was insufficient evidence to permit a finding that defendant intended to use the firearm against F. To the extent that he prevails on that issue, defendant requests a remand in a separate case in which probation was revoked. *Held*: The trial court erred. The evidence was insufficient to allow a reasonable inference that defendant intended to use the gun against F.

In Case No. 17CR73083, conviction on Count 4 reversed; remanded for resentencing; otherwise affirmed. In Case No. 16CR43626, remanded for resentencing.

Tracy A. Prall, Judge.

Ernest G. Lannet, Chief Defender, Criminal Appellate Section, and Kali Montague, Deputy Public Defender, Office of Public Defense Services, filed the brief for appellant.

Ellen F. Rosenblum, Attorney General, Benjamin Gutman, Solicitor General, and Christopher Page, Assistant Attorney General, filed the brief for respondent.

Before Armstrong, Presiding Judge, and Aoyagi, Judge, and Kistler, Senior Judge.

AOYAGI, J.

In Case No. 17CR73083, conviction on Count 4 reversed; remanded for resentencing; otherwise affirmed. In Case No. 16CR43626, remanded for resentencing.

**AOYAGI, J.**

This is a consolidated appeal. In Case No. 17CR73083, defendant was convicted of four felony charges, including Count 4, unlawful use of a weapon (UUW), ORS 166.220, aggravated by the use of a firearm, ORS 161.610. In Case No. 16CR43626, defendant's probation was revoked. On appeal, defendant assigns error to the trial court's denial of his motion for judgment of acquittal on Count 4 in Case No. 17CR73083, seeking reversal of that conviction and a remand for resentencing in both cases. For the reasons that follow, we agree that the trial court erred in denying defendant's motion for judgment of acquittal on Count 4. Accordingly, we reverse defendant's conviction on Count 4 in Case No. 17CR73083, remand for resentencing in both cases, and otherwise affirm.

## STANDARD OF REVIEW

In reviewing the denial of a motion for judgment of acquittal, we "view the evidence in the light most favorable to the state to determine whether a rational trier of fact, making reasonable inferences, could have found the essential elements of the crime proved beyond a reasonable doubt." *State v. Hall*, 327 Or 568, 570, 966 P2d 208 (1998). Where the state has sought to establish an element of the crime by reasonable inference, "whether sufficient evidence supports the inference" is a question of law for the court. *State v. Guckert*, 260 Or App 50, 55, 316 P3d 373 (2013), *rev den*, 354 Or 840 (2014).

## FACTS

This case involves a gang-related shooting. On the day in question, F went to a house in Woodburn where he kennels his three dogs and occasionally stays. He went to check on his dogs. Various people were at the house, including Giron-Cortes, whom F recognized from high school. At some point, F got into a fight with three unidentified men in the backyard. The fight lasted about three minutes, until someone told them to break it up, and everyone left. Giron-Cortes heard about the fight but did not see it.

After the fight, F met up with two of his cousins, M and P. F wanted revenge against the guys who had fought

him. P drove F and M to the Woodburn house, where F and M went up to the house to see if the guys were still there, while P stayed in the car. F and M did not see anyone, so, after checking on F's dogs, they began walking back to the car.

Meanwhile, someone reported to Giron-Cortes that three drunken men were hanging around the Woodburn house and "talking a lot of smack." At the time, Giron-Cortes was a high-ranking member of a particular gang in Woodburn. Another gang member was Little Blue, whose girlfriend lived at the Woodburn house, and defendant was a gang prospect. Giron-Cortes, Little Blue, and defendant were together when they heard about the men and decided to go to the Woodburn house. Giron-Cortes drove his extended-cab truck, with Little Blue in the passenger seat and defendant in the backseat. They were going to tell the men "to leave, and if a fight happens, a fight happens."

When they arrived, Giron-Cortes saw someone walking toward the street from the house. Giron-Cortes could not see who it was in the dark, but it was in fact F. Giron-Cortes stopped the truck, and Little Blue jumped out and began either chasing F or fighting with F. According to F, Little Blue had something like a machete, and F was trying to draw Little Blue away for a one-on-one fight, when M jumped at Little Blue and kneed him in the chest and Little Blue responded by striking M on the arm with the machete. M ran away toward some garbage cans, while Little Blue continued either chasing F or fighting with F. Giron-Cortes was outside his truck watching Little Blue and F—he did not join in the fight, because the gang protocol was to let people fight one-on-one and only join in if the situation escalated—when defendant got out of the truck and shot M once in the foot.[1] Defendant shot M as soon as he got out

---

[1] F and Giron-Cortes testified at trial, while M, P, Little Blue, and defendant did not. Giron-Cortes and F gave differing accounts of what happened. For example, Giron-Cortes denied seeing any machete, described Little Blue and F as "throwing blows" in an even fight, and denied that anyone tried to intervene in Little Blue and F's fight, while F testified that he was trying to draw Little Blue away for a one-on-one fight but that they never actually fought, that M kneed Little Blue and that Little Blue struck M with a machete, and that M was running away from Little Blue and F when he was shot. The trial court sitting as factfinder ultimately found Giron-Cortes more credible than F, at least in some

of the truck, while M was near the garbage cans. Giron-Cortes heard the shot, turned, and saw defendant pointing a gun toward the ground. He asked defendant, "What the f*** did you do?" Defendant responded, "That's what I do."[2] Giron-Cortes immediately got in his truck to leave, because he was on zero-tolerance probation and not allowed to be around firearms. Little Blue jumped in the cab, and defendant jumped in the truck bed, and they left.

As a result of the incident, defendant was indicted on five charges in Case No. 17CR73083: second-degree assault of M; third-degree assault of F, on an aiding and abetting theory; UUW against M; UUW against F (Count 4); and felon in possession of a firearm. All charges but the last were alleged to be aggravated by the use of a firearm. Defendant waived his right to a jury, and the case was tried to the court. At the close of the state's evidence, as relevant here, defendant moved for a judgment of acquittal on Count 4. The state opposed the motion, arguing that defendant was "standing by with a firearm" while Little Blue fought F and "used that firearm when he s[aw] another person approaching." The court denied the motion.

Ultimately, the court acquitted defendant on the charge of assaulting F, stating that, even if Little Blue and F were fighting when defendant shot M, there was no evidence that F was injured in that fight. *See* ORS 163.165 (identifying various means of committing the crime of third-degree assault, all of which require causing either "physical injury" or "serious physical injury"). The court found defendant guilty on the other four charges. As to Count 4, the court stated that "it is unlawful to menace someone," that "legally it is menacing" to get "out of the truck and fire[] a shot at [M] while [F] was present," and that it was therefore finding defendant guilty on Count 4.

---

regards, but the state correctly notes that later credibility findings are not relevant in reviewing the denial of a motion for judgment of acquittal. We summarize the facts in the light most favorable to the state's theory of the case, based on a combination of Giron-Cortes's and F's testimony.

    [2] When asked at trial if Little Blue's answer meant something to him, Giron-Cortes answered, "Uh, no, it just means something dumb that happened." Asked if Little Blue could have meant "something like that's what I do as a gang member," Giron-Cortes responded, "I mean it could be."

Defendant appeals the judgment of conviction in Case No. 17CR73083, assigning error to the trial court's denial of his motion for judgment of acquittal on Count 4.[3] He does not challenge his other convictions in that case. Defendant also appeals a related probation-revocation judgment in a separate case, Case No. 16CR43626, requesting resentencing if we reverse his conviction on Count 4.

## ANALYSIS

As relevant here, a person commits the crime of UUW if the person "[a]ttempts to use unlawfully against another, or *carries or possesses with intent to use unlawfully against another*, any dangerous or deadly weapon." ORS 166.220(1)(a) (emphasis added). Because carrying or possessing a dangerous or deadly weapon with the *intent* to use it unlawfully against another constitutes UUW, actual use of the weapon is unnecessary for a conviction. *State v. McAuliffe*, 276 Or App 259, 263, 366 P3d 1206, *rev den*, 359 Or 847 (2016) ("As the text of the statute makes clear, a person can commit UUW without actually 'using' a weapon."). As for what constitutes an unlawful "use" (attempted or intended), "use" as used in ORS 166.220(1)(a) refers to "employment of a weapon to inflict harm or injury" or "employment of a weapon to threaten immediate harm or injury." *State v. Ziska / Garza*, 355 Or 799, 811, 334 P3d 964 (2014).

Count 4 of the indictment in Case No. 17CR73083 alleged that, on the date of the incident, defendant possessed a gun with the intent to use it unlawfully against F. Defendant contends that the trial court erred in denying his motion for judgment of acquittal on that count, because no rational trier of fact, making reasonable inferences, could find the essential elements of the crime to have been proved beyond a reasonable doubt. For purposes of appeal, defendant does not contest that he possessed a gun, that he used it to shoot M, and that F was present when he shot M. Defendant argues only that the evidence was insufficient to allow a finding that he possessed the gun with the intent to

---

[3] Defendant also assigns error to the trial court's denial of his motion for judgment of acquittal as to the aggravating firearm element on Count 4. Given our disposition of the first assignment of error, we do not reach the second assignment of error.

use it against *F*. Defendant argues that there is no evidence connecting his possession of the weapon with any intent to use it against F.

The state maintains that the evidence was sufficient to convict defendant on Count 4. Specifically, the state argues that there was evidence that defendant was in possession of a firearm, that he had gone with Giron-Cortes and Little Blue to stand up for the gang, and that that objective "took a particular focus—F"—when Giron-Cortes parked after seeing F and Little Blue jumped out of the car to chase F. The state further points to the gang protocol of not intervening in one-on-one fights, unless the situation escalates, and to F's testimony indicating that M had intervened in Little Blue's fight with F by kneeing Little Blue in the chest as he chased F. In the state's view, a rational trier of fact could reasonably infer that defendant shot M to "assist" Little Blue in his fight with F. Thus, the state argues, defendant possessed the gun with the intent to use it against F.

Intent is rarely proved by direct evidence. *State v. Rose*, 311 Or 274, 282, 810 P2d 839 (1991). It is entirely permissible for the state to "rely on circumstantial evidence and reasonable inferences flowing from that evidence" to prove a person's intent. *State v. Bivins*, 191 Or App 460, 466, 83 P3d 379 (2004). At the same time, a conviction may not be based on speculation. *Guckert*, 260 Or App at 55. The line between a reasonable inference that may permissibly be drawn from the facts in evidence and impermissible speculation is "not always a bright one." *Id.* at 56. It is ultimately a line "drawn by the laws of logic," however, rather than "by judicial idiosyncrasies." *Bivins*, 191 Or App at 467. "If there is an experience of logical probability that an ultimate fact will follow a stated narrative or historical fact, then the jury is given the opportunity to draw a conclusion because there is a reasonable probability that the conclusion flows from the proven facts." *Id.* "Whether a defendant's act may form the basis for an inference of that defendant's mental state depends on the facts and circumstances of a particular case," *State v. Rogers*, 301 Or App 393, 399-400, 457 P3d 363 (2019), and is a question of law, *Guckert*, 260 Or App at 55.

In *State v. Rose*, 109 Or App 378, 380, 382, 819 P2d 757 (1991), we held that there was sufficient evidence for a rational trier of fact to find that the defendant had intended to use a pistol against a police officer who stopped the car in which she was travelling. There was evidence that, just before the officer stopped the car, the defendant removed a .22 caliber pistol from her purse and placed it—unholstered, loaded, and cocked—on the seat next to her, under her purse. *Id.* at 380. When the defendant lifted her purse during the stop, the officer caught sight of the holster and asked if she had a weapon. *Id.* She admitted that she did and handed over the pistol. *Id.* On that record, we held that a rational trier of fact "could have found that defendant intended to use the pistol against" the officer. *Id.* at 382.

Similarly, in *McAuliffe*, 276 Or App at 265, we held that the evidence was sufficient to allow a finding that the defendant had intended to unlawfully use a shotgun against the pilot of a small plane that flew over his house. There was evidence that the defendant told an airport operations manager that he would "take matters into his own hands" if they did not do something about the low-flying plane; that the defendant later called 9-1-1 and told the dispatcher that he was "sitting here with a shotgun" and that the plane had been bothering him all summer; that, when police officers arrived at the defendant's house, there was a shotgun on his porch, and, when he was later arrested and interviewed by the police, the defendant asked, "What do I have to do, shoot him down to get him off of me?" and admitted to having seriously thought about shooting at the plane; and that the defendant held a shotgun shell up as the plane flew by "to send [the pilot] a message to stop flying over his house." *Id.* at 260-61. On that record, a rational trier of fact could find that the defendant carried or possessed the shotgun on his porch with the intent to shoot it at the plane or to threaten to shoot it at the plane. *Id.* at 265.

The state argues that *Rose* and *McAuliffe* support the trial court's denial of defendant's motion for judgment of acquittal in this case. Those cases are not entirely on point, however, in that, in both *Rose* and *McAuliffe*, there was no question as to who the defendant intended to use the firearm

against—if he or she intended to use it—but only whether he or she intended to use it at all. Recall that "use" refers to employment of a weapon either "to inflict harm or injury" or "to threaten immediate harm or injury." *Ziska / Garza*, 355 Or at 811. In *Rose*, the only person who the defendant could have intended to use the pistol against was the officer, and the evidence—including that the defendant was concealing a recently-retrieved, unholstered, loaded, and cocked pistol in arm's reach during the traffic stop—was sufficient to allow an inference that she intended to use it, either to harm the officer or to threaten him. In *McAuliffe*, the only person who the defendant could have intended to use the shotgun against was the pilot, and the evidence—including what the defendant said to the airport operations manager, the 9-1-1 dispatcher, and the police officers—was sufficient to allow an inference that he intended to use it, either to harm the pilot or to threaten him.

Here, by contrast, there is certainly evidence that defendant had a gun when he went to the Woodburn house, and there is certainly evidence that, at some point, he formed the intent to use it against M. But we agree with defendant that the evidence was insufficient to allow a reasonable inference that he also intended to use the gun against *F*.

Between the trial court and the state, various rationales have been articulated as to why the evidence was sufficient for a conviction. In denying defendant's motion for judgment of acquittal, the trial court referred to defendant "standing by with a firearm" while Little Blue and F fought as sufficient to establish UUW against F. We disagree. The fact that defendant was in possession of a gun while sitting inside Giron-Cortes's truck, without more, does not allow a reasonable inference that defendant intended to use the gun against F. Later, in rendering its verdict, the trial court explained that it was finding defendant guilty of UUW against F because defendant had unlawfully "menaced" F by shooting at M "while [F] was present." If defendant used or intended to use the gun to threaten F with immediate harm or injury, that would certainly constitute UUW against F. *Ziska / Garza*, 355 Or at 811. However, to the extent that the trial court meant "menacing" to refer to using the gun to

threaten F, there is no evidence that defendant ever threatened F with the gun. The only evidence is that defendant meant to shoot and did shoot M—whose physical proximity to F at the time of the shooting is unclear. As for defendant *intending* to threaten F with the gun, there is no evidence from which a nonspeculative inference can be drawn that defendant intended to threaten F with the gun.

The state advances its own argument for why the evidence was sufficient. It contends that, once Giron-Cortes, Little Blue, and defendant arrived at the Woodburn house, defendant's general objective to stand up for the gang "took a particular focus—F"—when Giron-Cortes parked after seeing F and Little Blue jumped out of the car to chase F. The state argues that it is reasonable to infer that, at that point, defendant formed the "specific intent to assist Little Blue in his fight with F by using [his gun] if the situation escalated or if Little Blue started losing the fight." The state further argues that, when M "broke the rule" about one-on-one fights by intervening in Little Blue and F's fight, defendant took action, consistent with the gang protocols.

We do not understand the state to argue that defendant going to the Woodburn house to confront three men, while in possession of a gun, would be enough in and of itself to convict defendant of three counts of UUW (one for each of the three men expected to be there), without any other evidence of defendant's intent relative to use of the gun.[4] Instead, we understand the state's argument to turn on the circumstantial evidence of defendant's intentions once he, Giron-Cortes, and Little Blue arrived at the Woodburn house. The difficulty with the state's argument is that it conflates defendant's *attention*, which a rational factfinder could infer was directed towards Little Blue and F, with his *intentions* regarding use of the gun, which there is no evidence were directed toward Little Blue or F.

Although it is reasonable to infer that defendant would want Little Blue to "win" his fight with F, given the parties' relationships, in order to obtain a conviction on

---

[4] We note that there is no evidence as to why defendant was carrying a gun on the day in question, whether he typically carried a gun, or how long that day he had been carrying the gun.

Count 4, the state had to prove that defendant intended to use the gun to inflict harm or injury to *F* or to threaten *F* with immediate harm or injury. *Ziska / Garza*, 355 Or at 811. Using a gun to injure M was UUW against M. Using a gun to injure M, so as to prevent M from intervening (or intervening further) in the fight between Little Blue and F, so as to improve Little Blue's chances of winning, might be some kind of crime against F—such as aiding and abetting assault (if F had been injured)—but it is not the crime of UUW. To commit UUW against F, defendant had to have intended *to use the gun* to inflict harm or injury to *F* or to threaten immediate harm or injury to *F*.

In sum, to obtain a conviction for UUW under the portion of the statute at issue in this case, the state had to prove that defendant intended to use a dangerous or deadly weapon against the specified victim. ORS 166.220(1)(a). That is, the state had to prove that defendant intended to use a dangerous or deadly weapon to inflict harm or injury to the specified victim or to threaten immediate harm or injury to the specified victim. *Ziska / Garza*, 355 Or at 811. Defendant's intent, including both his intent to use the weapon at all and who he intended to use it against, may be inferred from circumstantial evidence and reasonable inferences flowing therefrom. It may not be the subject of speculation, however, and, in this case, it would be speculative to find that defendant intended to use the gun to inflict harm or injury to *F* or to threaten *F*. Because that is not a reasonable inference on this record, the trial court erred in denying defendant's motion for judgment of acquittal on Count 4.

In Case No. 17CR73083, conviction on Count 4 reversed; remanded for resentencing; otherwise affirmed. In Case No. 16CR43626, remanded for resentencing.