**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

v.

SCOTT RAYMOND KEAST,

Defendant - Appellant.

No. 24-1253

D.C. No.
3:22-cr-00297-
HZ-1

OPINION

Appeal from the United States District Court
for the District of Oregon
Marco A. Hernández, District Judge, Presiding

Argued and Submitted February 7, 2025
Portland, Oregon

Filed September 10, 2025

Before: Carlos T. Bea, Lucy H. Koh, and Jennifer Sung,
Circuit Judges.

Opinion by Judge Sung

## SUMMARY[*]

## Criminal Law

The panel vacated a sentence and remanded for resentencing in a case in which Scott Keast pled guilty to one count of felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1).

When Keast was sentenced for that federal crime, he had a prior, Oregon conviction for aggravated "unlawful use of a weapon." *See* Or. Rev. Stat. §§ 161.610, 166.220(1)(a). The district court concluded that Keast's prior conviction qualified as a "crime of violence" under the Sentencing Guidelines, U.S.S.G. § 4B1.2(a)(1), which increased the recommended sentence.

Keast contended that the district court's crime-of-violence analysis was incorrect. The panel agreed. The panel held that because the Oregon statutes of conviction do not require "as an element the use, attempted use, or threatened use of physical force against the person of another," Keast's prior conviction is not a crime of violence under the Sentencing Guidelines. The district court therefore erred when determining Keast's base offense level and calculating the Sentencing Guidelines range.

---

[*] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

## COUNSEL

Suzanne Miles (argued), Criminal Appellate Chief; Sarah Barr, Thomas H. Edmonds, and Lewis Burkhart, Assistant United States Attorneys; Natalie K. Wight, United States Attorney; Office of the United States Attorney, United States Department of Justice, Portland, Oregon; for Plaintiff-Appellee.

Andrew M. Kohlmetz (argued), The Law Office of Andrew M. Kohlmetz LLC, Portland, Oregon, for Defendant-Appellant.

## OPINION

SUNG, Circuit Judge:

Scott Keast challenges his 46-month sentence for one count of felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1). When Keast was sentenced for that federal crime, he had a prior, Oregon conviction for aggravated "unlawful use of a weapon." *See* Or. Rev. Stat. §§ 161.610, 166.220(1)(a). The district court concluded that Keast's prior conviction qualifies as a "crime of violence" under the Sentencing Guidelines, U.S.S.G. § 4B1.2(a)(1), which increased the recommended sentence. Keast contends the district court's crime-of-violence analysis was incorrect, and we agree. Because the Oregon statutes of conviction do not require "as an element the use, attempted use, or threatened use of physical force against the person of another," Keast's prior conviction is not a crime of violence under the Sentencing Guidelines. We therefore vacate his sentence and remand for resentencing.

## I.  BACKGROUND

In 2024, Keast pled guilty in federal court to one count of felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1). At that time, Keast had a prior Oregon felony conviction for "unlawful use of a weapon," under the "possession" subsection, Or. Rev. Stat. § 166.220(1)(a), as aggravated by Oregon's firearm enhancement statute, *id*. § 161.610. *See infra*, Section III (explaining how the firearm enhancement statute is applied to create aggravated versions of state law crimes).

At sentencing, the parties disputed whether Keast's prior conviction qualifies as a "crime of violence," as defined under the Sentencing Guidelines, § 4B1.2(a)(1). The district court concluded that it does. That conclusion increased Keast's base offense level from 14 to 20, which, in turn, increased his Guidelines imprisonment range from 30–37 months to 51–63 months. *See* U.S.S.G. § 2K2.1(a)(4)(A), (6). The district court sentenced Keast to a below-guidelines sentence of 46 months' imprisonment. Keast timely appealed.[1]

After receiving briefing and hearing argument in this case, we concluded that Keast's prior Oregon conviction is not a crime of violence under the Sentencing Guidelines. This meant that, when the district court sentenced Keast, it should have considered a recommended Guidelines range of 30–37 months, instead of 51–63 months. By the time this case was argued, however, Keast had already served approximately 28 months in custody. Thus, it was possible

---

[1] The government does not dispute that Keast's appeal is permitted under his plea agreement, which specifically reserved his right to appeal the district court's determination regarding his "base offense level based on his prior Oregon conviction for Unlawful Use of a Firearm."

that, if the mandate issued immediately, the district court on remand would impose a sentence for which Keast would be eligible for immediate, or at least imminent, release. Accordingly, we issued our dispositive order promptly, on February 10, 2025, stating that an opinion explaining the disposition would follow in due course. *See United States v. Perez-Garcia*, 96 F.4th 1166, 1172–74 (9th Cir. 2024) (explaining that appellate courts may at times bifurcate an expedited order from an opinion explaining its reasoning when an immediate ruling is warranted). We now provide the rationale for our dispositive order.[2]

## II. STANDARD OF REVIEW

"Whether a prior offense constitutes a crime of violence under the Sentencing Guidelines is a legal question that we review de novo." *United States v. Castro*, 71 F.4th 735, 737 (9th Cir. 2023).

## III. DISCUSSION

The Sentencing Guidelines instruct a sentencing court to apply a base offense level of 20 if "the defendant committed any part of the instant offense subsequent to sustaining one felony conviction of . . . a crime of violence." U.S.S.G. § 2K2.1(a)(4). Section 4B1.2(a) in turn defines a "crime of violence" as "any offense under federal or state law, punishable by imprisonment for a term exceeding one year," that either falls within a list of enumerated offenses, *see*

---

[2] The government filed a motion to recall the mandate of the dispositive order, seeking to "preserv[e] [its] ability to seek further review of the Court's decision regarding the issue presented on appeal." We denied the motion but clarified that "[a]fter [the] opinion explaining the disposition in this case is filed, the government may seek further review of the Court's decision by filing a petition for panel rehearing or rehearing en banc accompanied by a motion to recall the mandate."

§ 4B1.2(a)(2), or else "has as an element the use, attempted use, or threatened use of physical force against the person of another," § 4B1.2(a)(1). The latter definition is referred to as "the elements clause" of § 4B1.2(a). *Castro*, 71 F.4th at 738.

"To determine whether a felony is a crime of violence" under § 4B1.2(a), "we apply the categorical approach." *Id*. This approach requires the reviewing court to "ignore what actually occurred during the defendant's prior felony" and instead "consider only whether the prior felony's elements cover conduct that sweeps more broadly than the conduct covered by § 4B1.2(a)'s crime-of-violence definitions." *Id*. (quotation marks and citation omitted). "If so, then the prior felony is not categorically a crime of violence and cannot be used to increase the base offense level under § 2K2.1(a)." *Id*. In conducting this analysis, we "must presume that [the defendant's prior conviction] rested upon nothing more than the least of the acts criminalized." *Id*. at 739 (quotation marks and citation omitted).

If the statute of conviction "criminalizes more conduct than the federal generic offense, the court may consider whether the statute is divisible." *United States v. Willis*, 795 F.3d 986, 989 (9th Cir. 2015). "A divisible statute is one that comprises multiple, alternative versions of the crime, at least one of which corresponds to the generic offense." *United States v. Sahagun-Gallegos*, 782 F.3d 1094, 1098 (9th Cir. 2015) (cleaned up). If the statute of conviction is divisible, then "we may examine a limited class of judicially noticeable documents to determine whether the alternative corresponding to the generic offense was the basis of the conviction." *Id*.

At issue in this case is Keast's prior conviction for "unlawful use of a weapon with a firearm," a felony offense

that arises from two Oregon statutes. The first statute, Or. Rev. Stat. § 166.220, prohibits the "unlawful use of a weapon" or "UUW."[3] As relevant here, § 166.220(1)(a) states that a person commits this offense if the person "[a]ttempts to use unlawfully against another, or carries or possesses with intent to use unlawfully against another, any dangerous or deadly weapon." The UUW offense is a felony. *Id.* § 166.220(3).

The second statute, Or. Rev. Stat. § 161.610, creates a sentencing enhancement for the use of a firearm during the commission of a felony. Section § 161.610(2) provides that "[t]he use or threatened use of a firearm, whether operable or inoperable, by a defendant during the commission of a felony may be pleaded in the accusatory instrument and proved at trial as an element in aggravation of the crime." The conduct proscribed by § 161.610(2) "is expressly designated an element." *State v. Flores*, 313 P.3d 378, 381 (Or. Ct. App. 2013). Adding this element to a felony offense "creates a new crime, the aggravated crime, which is separate from the 'unaggravated crime.'" *Id*. Here, Keast was convicted of the aggravated crime of UUW "with a firearm."

We previously considered Oregon's UUW statute, Or. Rev. Stat. § 166.220, in *United States v. Willis*, 795 F.3d 986 (9th Cir. 2015). There, we concluded that § 166.220(1)(a) is "divisible" and consists of two crimes, "(1) attempting to use a deadly weapon unlawfully against another (the 'attempt offense'), and (2) carrying or possessing a deadly weapon

---

[3] Oregon state courts typically abbreviate "unlawful use of a weapon" as "UUW" and refer to a § 166.220 conviction as a "UUW conviction." *See generally, e.g.*, *State v. McAuliffe*, 366 P.3d 1206, 1208–09 (Or. Ct. App. 2016).

with intent to use it unlawfully (the 'possession offense')."
*Id.* at 995. We held that the UUW-attempt offense
"constitutes a crime of violence as defined in § 4B1.2(a)(1)
of the Sentencing Guidelines." *Id.* However, we concluded
that the UUW-possession offense "does not include as an
element 'the use, attempted use, or threatened use of
physical force against the person of another.'" *Id.* at 996
(quoting U.S.S.G. § 4B1.2(a)(1)).

The parties agree that Keast was convicted of the UUW-
possession offense in § 166.220(1)(a). The parties also agree
that, under *Willis*, the UUW-possession offense, by itself, is
not a crime of violence.[4] The parties dispute, however,
whether Keast's aggravated conviction for the UUW-
possession offense "with a firearm" is a crime of violence.
Therefore, the question presented is whether adding
Oregon's firearm enhancement statute, Or. Rev. Stat.
§ 161.610(2), to the UUW-possession offense transforms

---

[4] At the time *Willis* was decided, the Sentencing Guidelines definition of
a crime of violence included a "residual clause" that encompassed any
offense that "otherwise involves conduct that presents a serious potential
risk of physical injury to another." 795 F.3d at 996. *Willis* concluded that
because the UUW-possession offense in § 166.220(1)(a) does not
include as an element "the use, attempted use, or threatened use of
physical force against the person of another," it could qualify as a crime
of violence "only if it falls within the residual clause." *Id.* The court then
remanded to the district court to determine which provision of
§ 166.220(1)(a) applied to the defendant's conviction. *See id.* at 996–97.
The residual clause has since been removed from U.S.S.G. § 4B1.2(a).
Because *Willis* concluded that the UUW-possession offense could
"constitute[] a 'crime of violence' *only if* it falls within the residual
clause," *id.* at 996 (emphasis added), under the current Sentencing
Guidelines definition, the UUW-possession offense in § 166.220(1)(a) is
not a crime of violence.

that offense into a crime of violence. For the reasons below, we conclude that it does not.

## A. Statutory Interpretation

Under the categorical approach, we must determine whether the elements of the aggravated UUW-possession offense "cover conduct that sweeps more broadly than the conduct covered by § 4B1.2(a)'s crime-of-violence definitions." *Castro*, 71 F.4th at 738 (quotation marks and citation omitted). We begin by analyzing the text of the state statute, *id.*, employing "ordinary tools of statutory interpretation, including state case law interpreting the statutes in question," *United States v. DeFrance*, 124 F.4th 814, 820 (9th Cir. 2024).

We conclude, first, that Oregon's firearm enhancement statute by itself does not include as an element "the use, attempted use, or threatened use of physical force against the person of another." U.S.S.G. § 4B1.2(a)(1). The firearm enhancement statute applies to "[t]he use or threatened use of a firearm, whether operable or inoperable, by a defendant during the commission of a felony." Or. Rev. Stat. § 161.610(2). Although this language requires the use or threatened use of a firearm, it does not, on its face, require the use or threatened use of a firearm "against the person of another." U.S.S.G. § 4B1.2(a)(1).

In contrast, other Oregon statutes criminalizing the use of weapons *do* specifically require use of the weapon "against another," or similar language. *See, e.g.*, Or. Rev. Stat. § 166.220(1)(a) ("A person commits the crime of unlawful use of a weapon if the person . . . [a]ttempts to use unlawfully *against another*, or carries or possesses with intent to use unlawfully *against another*, any dangerous or deadly weapon . . . .") (emphasis added); *id*. § 166.190

("Any person over the age of 12 years who, with or without malice, purposely points or aims any loaded or empty pistol, gun, revolver or other firearm, *at or toward any other person within range of the firearm*, except in self-defense, shall be fined upon conviction . . . .") (emphasis added). The Oregon legislature knows how to include such a requirement and declined to do so in § 161.610(2). *Cf. Astrue v. Ratliff*, 560 U.S. 586, 595 (2010) (explaining that Congress's "express" use of statutory language shows that it "knows how" to achieve a statutory effect "where it desires to do so," and courts are "reluctant" to read that effect into related provisions "absent clear textual evidence supporting such an interpretation").

The government also fails to identify any Oregon state court decision interpreting § 161.610(2) to require the use or threatened use of a firearm against another person, even though Oregon courts have narrowed the statute in other ways. *See, e.g.*, *State v. Harris*, 25 P.3d 404, 407 (Or. Ct. App. 2001) (clarifying that "use or threatened use" of a firearm refers to the "discharge or threatened discharge" of a firearm); *State v. Pies*, 802 P.2d 702, 704 (Or. Ct. App. 1990) (holding that a defendant must "personally" use or threaten to use the firearm).

We conclude that the firearm enhancement statute does not require the use or threatened use of a firearm against the person of another. Accordingly, neither the firearm enhancement nor the UUW-possession offense, by themselves, include as an element "the use, attempted use, or threatened use of physical force against the person of another." U.S.S.G. § 4B1.2(a)(1); *see Willis*, 795 F.3d at 996. However, as noted, under Oregon law, the firearm enhancement creates a new crime, the "aggravated crime," by "adding" an "element" to the UUW-possession offense.

*Flores*, 313 P.3d at 381. The government argues that the elements of the aggravated UUW-possession offense, when considered together, require the use of physical force against the person of another.

To address the government's argument, we begin by reading the combined elements of the aggravated offense together. UUW-possession with a firearm requires: (1) "[t]he use or threatened use of a firearm, whether operable or inoperable, by [the] defendant during the commission of" the felony of (2) carrying or possessing; (3) a dangerous or deadly weapon; (4) with intent to use it unlawfully; (5) against another. Or. Rev. Stat. § 161.610(2) (firearm enhancement); *id.* § 166.220(1)(a) (UUW-possession); *Willis*, 795 F.3d at 996 (listing elements of UUW-possession). "[U]se or threatened use of a firearm" means the discharge or threatened discharge of the firearm. *Harris*, 25 P.3d at 407.

The government argues that because the aggravated UUW-possession offense requires the "use or threatened use of a firearm . . . during the commission of a felony" that, in turn, requires "intent to use" the firearm unlawfully "against another," the use or threatened use of the firearm *must* be against the defendant's intended target. The government refers to this potential limitation of the aggravated offense as the "intended-target" requirement. Keast contends that the aggravated offense does not impose any such intended-target requirement; rather, he argues, the aggravated offense covers instances in which a defendant—while intending to use a firearm against a target in the future—discharges the weapon at something other than a person.

We agree with Keast's interpretation of the aggravated offense. The government's "intended-target" theory is not

supported by either the statutory text or state court interpretations of that text. *See Castro*, 71 F.4th at 738; *DeFrance*, 124 F.4th at 820. The text of the UUW-possession statute, as supplemented by the firearm enhancement statute, does not state that the use or threatened use of a firearm must be "against the intended target." Rather, the statute states that the use or threatened use of a firearm must be "during the commission" of the corresponding felony. Or. Rev. Stat. § 161.610(2). The terms "during the commission" and "against the intended target" are not interchangeable: A defendant could use or threaten to use a firearm during the commission of the UUW-possession offense without using or threatening to use the firearm against his intended target.

Consider a defendant who, right before setting out to find and shoot his intended target, fires his weapon into the ground to confirm the gun is loaded, but is then intercepted before reaching his intended target. As Keast argues, this defendant has used a firearm while possessing the weapon with intent to use it unlawfully against another, as required by the text of the aggravated UUW-possession offense. *See* Or. Rev. Stat. §§ 161.610(2), 166.220(1)(a)**.** The defendant has not, however, used the weapon against his intended target, or any other person. As this example illustrates, the text of the aggravated offense lacks any "intended-target" requirement. Indeed, the government arguably concedes this point in its brief when it refers to this hypothetical prosecution as a "theoretical possibility" under the statute.

Oregon state court decisions do not support the government's interpretation of UUW-possession with a firearm. Indeed, at least two state court decisions undermine the government's intended-target theory. In *State v. Gilbert*, 781 P.2d 389 (Or. Ct. App. 1989), the Oregon Court of

Appeals considered a defendant's challenge to the application of the same firearm enhancement at issue here, Or. Rev. Stat. § 161.610, to a different state crime, felon in possession of a firearm ("FIP"). *Id.* at 390; *see also* Or. Rev. Stat. § 166.270(1) (FIP offense). The defendant argued, among other things, that the firearm enhancement "applies only to crimes where use or threatened use of a firearm actually facilitates or furthers the underlying crime." *Id.* The court rejected this argument, holding that "[n]othing in the language of [§] 161.610 requires that the use or threatened use of a firearm be in furtherance of the felony charged." *Id.*

Here, the government's intended-target interpretation of § 161.610 is a narrower version of the interpretation that the *Gilbert* court rejected. That is, under the government's interpretation, § 161.610's firearm enhancement applies only if the defendant uses or threatens to use the firearm against his intended victim. Such use necessarily "furthers" the underlying crime of UUW-possession—i.e., possessing a weapon with intent to use it unlawfully against the target. *See* Or. Rev. Stat. § 166.220(1)(a). But *Gilbert* held that § 161.610 applies even if the defendant's use of the weapon does not further the underlying crime. Therefore, the *Gilbert* court impliedly rejected the government's intended-target theory and instead suggested that § 161.610 applies whether or not the defendant's use or threatened use of the firearm is against his intended target.[5]

---

[5] Even if we assume (contrary to the *Gilbert* court's conclusion) that § 161.610's firearm enhancement applies only when the firearm is used "in furtherance of" the underlying crime, that limiting construction would not necessarily lead us to adopt the government's interpretation of UUW-possession with a firearm. A defendant could fire a gun in furtherance of his intent to shoot another person without actually shooting at that person. The hypothetical discussed above—in which a

*State v. Garibay*, 478 P.3d 1006 (Or. Ct. App. 2020), also undermines the government's intended-target theory. In *Garibay*, the defendant and two acquaintances drove to a nearby house after hearing that a group of men were "hanging around" the house. *Id.* at 1007. When they arrived, one of the defendant's acquaintances began fighting with a man referred to as "F." *Id.* at 1007–08. The defendant eventually got out of the car and shot a different person, referred to as "M," in the foot. *Id.* at 1008. The state charged the defendant with, among other things, aggravated UUW-possession against F. *Id.* at 1008–09. Although the Oregon Court of Appeals did not discuss the state's application of the firearm enhancement in *Garibay*, the decision is inconsistent with the government's intended-target theory.[6] The defendant in *Garibay* was charged with the use or threatened use of a firearm while possessing with intent to shoot F, even though the defendant actually used the weapon against a different individual, M. *Id.* In other words, the state charged the firearm enhancement to the UUW-possession offense as to F, even though the defendant did not actually use his weapon against F, his alleged intended target.[7]

None of the other state court cases cited by the government support its intended-target theory. The

---

defendant fires his weapon at the ground to test it before setting out to find his target—illustrates that point.

[6] The *Garibay* court reversed the defendant's conviction on the ground that there was insufficient evidence to establish the defendant's liability for even the unaggravated UUW-possession offense, because the evidence did not establish that the defendant "intended to use the gun against F." *Id.* at 1010.

[7] Although the state argued that the defendant "shot M to 'assist' [the defendant's acquaintance] in his fight with F," it did not argue that the defendant used or threatened to use the gun against F. *Id.* at 1009.

government asserts that *State v. McAuliffe*, 366 P.3d 1206 (Or. Ct. App. 2016), shows "that [the UUW-possession offense's] intent requirement is victim specific," meaning that "each intended target is a separate unit of prosecution." The defendant in *McAuliffe* was charged with the aggravated UUW-possession offense after he admitted to police that he had "serious thoughts about shooting at" an airplane flying over his property, and that he had "held a shotgun shell up to the airplane as it flew by in order to send the pilot a message to stop flying over his house." *Id.* at 1208 (cleaned up). Because the defendant did not raise the issue, the *McAuliffe* court expressly declined to address whether the evidence was sufficient to establish that the defendant had "used or threatened to use" the shotgun in a manner that subjected him to the firearm enhancement. *See id.* at 1209–10, 1210 n.2. But even assuming that the firearm enhancement was validly applied in *McAuliffe*, that case simply demonstrates that the aggravated UUW-possession offense *can* be applied where the defendant uses or threatens to use a firearm against his intended target. *McAuliffe* does not establish that the aggravated UUW-possession offense can *only* be applied in such circumstances, as the categorical approach requires.

The government also relies on *State v. Dentel*, 354 P.3d 753 (Or. Ct. App. 2015), for the proposition that the "intended-target requirement is . . . what prevents a firearm-enhanced UUW conviction from merging with a firearm-enhanced felon in possession conviction" under Oregon law. In *Dentel*, the Oregon Court of Appeals determined, on plain error review, that a guilty verdict for the crime of UUW with a firearm does not necessarily merge with a guilty verdict for the crime of FIP with a firearm. *Id.* at 755–57. In relevant part, the court concluded that the state had presented a "plausible argument" that "intent to use [a] weapon

. . . unlawfully against another person" is an element of the aggravated UUW-possession offense but not of the aggravated FIP offense. *Id.* at 757–58. This conclusion does not, however, support the government's position here. It is undisputed that the aggravated UUW-possession offense requires *intent* to use a weapon against another person. *See* Or. Rev. Stat. § 166.220(1)(a). *Dentel* does not address the question at issue here, which is whether the aggravated UUW-possession offense requires that a defendant's use or threatened use of a firearm be against their intended target.

In sum, the government's intended-target theory is inconsistent with the statutes of conviction facially and as interpreted by state courts. We therefore conclude that Keast's prior conviction for UUW-possession with a firearm does not include as an element "the use, attempted use, or threatened use of physical force against the person of another." U.S.S.G. § 4B1.2(a)(1).

## B. The "Realistic Probability" Standard

The government alternatively argues that even assuming the aggravated UUW-possession offense does not facially require the use of a firearm against another, Keast's prior conviction constitutes a crime of violence because Keast establishes only a "theoretical possibility" that the statutes could be applied in a way that does not meet the Sentencing Guidelines definition. The government emphasizes that Keast has not identified an actual case in which an Oregon court has applied the aggravated UUW-possession offense to a defendant who did not use or threaten to use a firearm against another person. Here, the government relies on *Gonzalez v. Duenas-Alvarez*, where the Supreme Court held that "to find that a state statute creates a crime outside the generic definition of a listed crime in a federal statute" there

must be "a realistic probability, not a theoretical possibility, that the State would apply its statute to conduct that falls outside the generic definition of a crime." 549 U.S. 183, 193 (2007).

*Duenas-Alvarez* concerned a provision of the Immigration and Nationality Act ("INA") that instructs that certain noncitizens convicted of one of the offenses listed in 8 U.S.C. § 1227(a) may be deported. *Id.* at 185. To determine whether a conviction qualifies as a listed offense, federal courts apply a version of the categorical approach. First, because the listed offenses are not defined by the INA, a court must determine the "generic" definition of the listed offense by determining how it is defined in "the criminal codes of most States." *Id.* at 186 (citation omitted). Second, a court must compare the statute of conviction to the generic definition. *Id.* at 186–87. In *Duenas-Alvarez*, the Supreme Court considered Duenas-Alvarez's argument that the California theft offense was broader than the generic definition of "theft" because the state offense covered "aiding and abetting." *Id.* at 188–89. The Court concluded that both the California and generic theft offenses covered "aiding and abetting" a theft, and then explained that the California theft statute would be a categorical match for generic theft unless Duenas-Alvarez could show that California law was somehow "special"—i.e., that California courts applied the state's statute to cover aiding and abetting conduct beyond that which most other states criminalized. *Id.* at 190–91.

Duenas-Alvarez tried to make this showing by pointing to various state court decisions that, in his view, demonstrated that California's application of its statute swept more broadly than the generic offense. *See id.* at 190–93. The Court, however, disagreed with Duenas-Alvarez's

reading of the state cases. *Id.* It then explained that "to find that a state statute creates a crime outside the generic definition of a listed crime," there must be a "realistic probability, not a theoretical possibility, that the State would apply its statute to conduct that falls outside the generic definition." *Id.* at 193. To demonstrate this "realistic probability," the litigant could either "show that the statute was so applied in his own case," or else "point to . . . other cases in which the state courts in fact did apply the statute in the special (nongeneric) manner for which he argues." *Id.* Because Duenas-Alvarez could not make this showing, the Court rejected his argument that California's statute criminalized conduct that fell "outside the generic definition of 'theft.'" *Id.* at 193–94.

There are two problems with the government's reliance on *Duenas-Alvarez* here. First, as we recently recognized, the Supreme Court's decision in *United States v. Taylor*, 596 U.S. 845 (2022), suggests that *Duenas-Alvarez*'s realistic probability standard "may have no application" in a case where, as here, "the inquiry posed by federal law is whether a state law has the use of force as an element." *Defrance*, 124 F.4th at 819 n.7. To understand why, it helps to review the Court's reasoning in *Taylor*.

In *Taylor*, the issue presented was whether the felony of "attempted Hobbs Act robbery" under 18 U.S.C. § 1951(a) categorically qualifies as a "crime of violence" under 18 U.S.C. § 924(c)(3)(A)'s "elements clause." 596 U.S. at 848. The elements clause of § 924(c)(3)(A) defines "crime of violence" as a felony offense that includes "as an element the use, attempted use, or threatened use of physical force

against the person or property of another."[8] The Court first explained that, when determining whether there is a categorical match between attempted Hobbs Act robbery and the elements clause of § 924(c)(3)(A), "the only relevant question" is whether "attempted Hobbs Act robbery" "always requires the government to prove . . . as an element of its case . . . the use, attempted use, or threatened use of force." 596 U.S. at 850. After comparing the elements of attempted Hobbs Act robbery under § 1951(a) and the elements of "crime of violence" under § 924(c)(3)(A), the Court concluded that the answer to that question was "no." *Id.* at 852 ("Simply put, no element of attempted Hobbs Act robbery requires proof that the defendant used, attempted to use, or threatened to use force.").[9]

---

[8] Section 924(c)(3)(A)'s definition of "crime of violence" is similar to but broader than the Sentencing Guidelines definition of "crime of violence" at issue here: § 924(c)(3)(A) includes the use, attempted use, or threatened use of force against another person *or their property*, while U.S.S.G. § 4B1.2(a)(1) is limited to force against another person.

[9] The Court's reasons for concluding that attempted Hobbs Act robbery "does not require the government to prove that the defendant used, attempted to use, or even threatened to use force against another person or his property" also support our conclusion that UUW-possession with a firearm does not require proof of the use of force against another person. *Taylor*, 596 U.S. at 851. The Court explained: "[T]o win a case for *attempted* Hobbs Act robbery the government must prove two things: (1) The defendant intended to unlawfully take or obtain personal property by means of actual or threatened force, and (2) he completed a 'substantial step' toward that end." *Id.* "Whatever one might say about *completed* Hobbs Act robbery, *attempted* Hobbs Act robbery does not satisfy the elements clause." *Id.* "[A]n intention is just that, no more," and "whatever a substantial step requires, it does not require the government to prove that the defendant used, attempted to use, or even threatened to use force against another person or his property." *Id.* A

In *Taylor*, as here, the government pointed to *Duenas-Alvarez* to argue that—even if the elements of attempted Hobbs Act robbery did not require the government to prove the use, attempted use, or threatened use of force as required under § 924(c)(3)(A)—Taylor's § 924(c)(3)(A) conviction was still proper because "most" prosecutions under the Hobbs Act involve an actual "communicated threat of force," and Taylor had "fail[ed] to identify a single case in which [the government] ha[d] prosecuted someone for attempted Hobbs Act robbery without proving a communicated threat." *Id.* at 857. The Court rejected this argument, explaining that *Duenas-Alvarez* was inapposite for "at least two reasons." *Id.* at 858. First, the Court explained, "the immigration statute at issue in *Duenas-Alvarez* required a federal court to make a judgment about the meaning of a state statute," and therefore the decision reflected a "federalism concern" that was not present in *Taylor* because the Hobbs Act is a federal statute.[10] *Id.* at 858–59. Second, and relevant here, the Court explained that "in *Duenas-Alvarez* the elements of the relevant state and federal offenses clearly overlapped and the only question the Court faced was whether state courts *also* 'appl[ied] the statute in [a] special (nongeneric) manner.'" *Id.* at 859

---

hypothetical helped to illustrate the point: a defendant could be convicted of "attempted Hobbs Act robbery" if they "intended and attempted" to use a threat of force, but "never even got to the point of threatening the use of force against anyone or anything." *Id.* at 852. Like attempted Hobbs Act robbery, UUW-possession with a firearm requires the government to prove the defendant *intended* to unlawfully use a firearm against another, but it does not require the government to prove the defendant actually did so.

[10] Although this case, like *Duenas-Alvarez* but unlike *Taylor*, requires us to interpret a state statute, we address the federalism concern by accounting for state court interpretations in our categorical analysis.

(quoting *Duenas-Alvarez*, 549 U.S. at 193). The Court did not need to "reach that question" in *Taylor* because the "[a]ttempted Hobbs Act robbery does not require proof of *any* of the elements § 924(c)(3)(A) demands." *Id.* "That ends the inquiry, and nothing in *Duenas-Alvarez* suggests otherwise." *Id.* The Court's reasoning suggests that where, as here, the *elements* of the underlying crime do not require the government to prove any of the elements of the "crime of violence" definition in U.S.S.G. § 4B1.2(a)(1), there is no categorical match, and the inquiry ends—we do not reach *Duenas-Alvarez*'s "realistic probability" standard.

The second problem with the government's argument is that, even assuming *Duenas-Alvarez*'s realistic probability standard applies here, Keast has satisfied that standard. Under our precedents, a defendant has "two paths" to show a realistic probability that a state would apply its statute to conduct that falls outside the generic definition of a crime. *Castro*, 71 F.4th at 741 (quoting *United States v. Baldon*, 956 F.3d 1115, 1124 (9th Cir. 2020)); *see also DeFrance*, 124 F.4th at 819. First, a defendant "may simply rely on the statutory language to establish the statute as overly inclusive." *Castro*, 71 F.4th at 741 (quotation marks and citations omitted). If it is "evident from [the] text" of a state statute that it does not categorically meet a generic definition of a crime, a defendant "need not point to an actual case applying the statute of conviction in a nongeneric manner." *DeFrance*, 124 F.4th at 819 (quoting *Chavez-Solis v. Lynch*, 803 F.3d 1004, 1010 (9th Cir. 2015)); *see Lopez-Aguilar v. Barr*, 948 F.3d 1143, 1147 (9th Cir. 2020) ("As long as the application of the statute's express text in the nongeneric manner is not a logical impossibility, the relative likelihood of application to nongeneric conduct is immaterial."). Second, as an *alternative* to relying on the statutory text

alone, the defendant may "point to his own case or other cases in which the state courts in fact did apply the statute in the special (nongeneric) manner for which he argues." *Baldon*, 956 F.3d at 1124 (quoting *Duenas-Alvarez*, 549 U.S. at 193).

Keast has satisfied the realistic probability standard under the first path. The elements of Keast's statutes of conviction, UUW-possession with a firearm, on their face and as interpreted by Oregon state courts, do not require the government to prove the use or threatened use of force against another person. Therefore, the statutes of conviction are facially overly inclusive relative to the Sentencing Guidelines definition of "crime of violence," and Keast has satisfied any burden he may have under *Duenas-Alvarez*.

## IV.   CONCLUSION

Keast's prior conviction for UUW-possession with a firearm is not categorically a crime of violence under U.S.S.G. § 4B1.2(a)(1) because the statutory elements of UUW-possession with a firearm do not require the government to prove the "use, attempted use, or threatened use of physical force against the person of another." Therefore, the district court erred when determining Keast's base offense level and calculating the Sentencing Guidelines range.

**VACATED AND REMANDED.**